THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDDIE LEE CRISS, Defendant-Appellant.

Fourth District    No. 4—96—0874

Opinion filed January 14, 1998.

Daniel D. Yuhas and Janieen R. Tarrance, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Marlene A. Frey, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

In March 1996, defendant Eddie Lee Criss was charged with unlawful possession with intent to deliver a controlled substance in Champaign County, Illinois. 720 ILCS 570/401 (West 1996). Defendant argued the police did not have probable cause to search and arrest him and filed a motion to suppress evidence. A hearing on that motion was held in August 1996.

At the suppression hearing, Officers Walton and Beuschlein testified that on March 2, 1996, they were stationed at two separate concealed locations to survey suspected illicit drug transactions at the residence at 1410 North Market, Champaign, Illinois. In the past, several drug search warrants had been executed at that residence and the garage behind it and several drug arrests had been made in that area. From approximately 2:30 a.m. until 4 a.m., both officers witnessed a heavy-set black male wearing a blue and white Fila coat interact with several individuals at the residence. The officers identified defendant as the individual wearing the Fila coat.

Officer Walton testified that, at approximately 3 a.m., he witnessed a burgundy Hyundai pull up to the residence. A black male got out, looked in all directions, and walked behind the house. He came back a few minutes later, accompanied by defendant. The Hyundai left, and defendant went to and stood on the porch of the residence. Officer Walton then witnessed a black female walk up to defendant on the porch. They looked around in all directions and exchanged something from their pockets. The black female left, glancing over her shoulders and looking back and forth. About 3:30 a.m., a gold Ford Bronco approached the residence. Two white males exited the Bronco and engaged in conversation with defendant. Officer Walton testified he distinctly heard defendant say, "You aren't the police, right?" One of the white males responded, "No way[,] man." One of the white males went with defendant into the residence and came back out about a minute later. The white male walked very quickly to the Bronco and left. Officer Walton then radioed other officers and instructed them to arrest defendant. Defendant was arrested on the porch, wearing a blue and white Fila coat and possessing crack cocaine in his coat pocket.

On cross-examination, Officer Walton was questioned about his surveillance location by defense counsel, Brian Silverman:

"Q. [Silverman]: Where were you located when you did this surveillance?

A. [Officer Walton]: In a concealed location within 50 yards of the front porch at 1410 North Market.

Q. [Silverman]: Could you tell me where you were located?

MR. DALY [(Prosecutor)]: Objection, Your Honor.

MR. SILVERMAN: Judge, I don't think his last answer was responsive.

THE COURT: Well—

MR. SILVERMAN: Concealed location within 50 yards.

THE COURT: Mr. Daly, what's the basis of the objection?

MR. DALY: Judge, if counsel wants to adduce the distance, he has that available to him. These locations are used on a repetitive basis, and speaking here in court today would totally eliminate those as useful positions in the future. If counsel needs information in terms of the distance or whether there were obstructions, I have no objection along those lines.

THE COURT: Mr. Silverman, I'm going to sustain the objection as to the exact location.

MR. SILVERMAN: Judge, there—I understand—I'm sorry. I won't argue about it, but I think we have a right and due process requires we have a right to know where he was so that the Court could take notice what the terrain is out there, what the buildings are like and that the court can determine from the evidence whether or not he could see what he says he saw. We can't do that—

THE COURT: Mr. Silverman—

MR. SILVERMAN: —without knowing where he was.

THE COURT: Mr. Silverman, even if he gives me an approximate location, I'm not gonna drive there and take a look. Sustained."

Defense counsel attempted again to question Officer Walton about his location:

"Q. [Silverman]: Well, were you next to a building? Do you understand the question, Mr. Walton?

A. [Officer Walton]: Yes, I do.

Q. [Silverman]: Were you next to a building?

A. [Officer Walton]: We were near a building, yes.

Q. [Silverman]: Were you next to a building?

MR. DALY: Objection.

THE COURT: Mr. Silverman—

MR. SILVERMAN: Well—

THE COURT: —we are not gonna play 20 questions. Mr. Silverman, I've ruled. Now ask him if he can see or anything like that. I don't want to get anymore into where this specific location was."

Officer Walton further testified that a streetlight at the intersection of Market and Roper Streets provided sufficient light to allow a

clear view of the people on the porch. He could not see the individuals' facial features clearly. The Hyundai and Bronco were stopped and crack pipes were found in each vehicle, but no rocks of crack cocaine. Cannabis was found in the Hyundai. The black female was never stopped.

Officer Beuschlein testified he measured the distance from his surveillance position to the porch to be just under 50 yards. From his vantage point, he could see defendant engage in two short transactions with a black male and a black female. Officer Beuschlein could make out the details of faces on the porch. After the transaction with the black female, Beuschlein watched two other police officers arrest defendant, who was wearing the blue and white Fila coat.

Defendant testified the Fila coat was not his, but belonged to another heavyset black male, named Richard. Defendant contends that Richard had just come inside the residence, taken off the Fila jacket and placed it on a chair. Defendant put the jacket on to go outside and get his overnight bag from his car when he was arrested. Defendant testified he did not know crack cocaine was in the jacket pocket. Angela McNeil, a resident of 1410 North Market Street and an acquaintance of defendant, also testified the jacket belonged to Richard.

The court held the officers had probable cause to arrest defendant and the motion to suppress was denied. Defendant signed a jury waiver and proceeded to a bench trial. The trial court found defendant guilty and sentenced him to six years' imprisonment. The court found defendant eligible for impact incarceration. Defendant appeals, arguing the trial court violated his rights under the sixth amendment's confrontation clause (U.S. Const., amend. VI) by not allowing defense counsel to cross-examine the surveillance officers as to the exact location from which they viewed the drug transactions. We affirm.

■ A criminal defendant has the right to confront the witnesses against him, including the right to cross-examine those witnesses. *Cruz v. New York*, 481 U.S. 186, 189, 95 L. Ed. 2d 162, 169, 107 S. Ct. 1714, 1717 (1987); *People v. MacFarland*, 228 Ill. App. 3d 107, 119, 592 N.E.2d 471, 480 (1992). These are essential and fundamental requirements for a constitutionally fair trial. *People v. Rutledge*, 135 Ill. App. 3d 259, 261-62, 481 N.E.2d 348, 350 (1985). A trial court may not deprive a defendant of the right to question witnesses; however, it may limit the scope of cross-examination. *People v. Frieberg*, 147 Ill. 2d 326, 357, 589 N.E.2d 508, 522 (1992). The latitude permitted on cross-examination is left largely to the discretion of the trial court and its determination will not be overturned absent a clear abuse of

discretion that resulted in manifest prejudice. *People v. Herrera*, 238 Ill. App. 3d 284, 290, 606 N.E.2d 267, 271 (1992). The trial court should give wide latitude to defense counsel when identification witnesses are being questioned. *People v. Hunley*, 189 Ill. App. 3d 24, 41, 545 N.E.2d 188, 199 (1989).

■ Illinois recognizes certain limitations on a defendant's right to cross-examine. The State may refuse to disclose the identity of law enforcement informants, so long as the nondisclosure will not deny an accused his constitutional rights. 134 Ill. 2d R. 412(j)(ii); *People v. Sutton*, 260 Ill. App. 3d 949, 957-58, 631 N.E.2d 1326, 1333 (1994). The defendant may overcome the informant privilege by demonstrating a need for the disclosure that is more than a " 'mere desire to cross-examine.' " *Cochrane's of Champaign, Inc. v. Illinois Liquor Control Comm'n*, 285 Ill. App. 3d 28, 33, 673 N.E.2d 1176, 1180 (1996), quoting *Sutton*, 260 Ill. App. 3d at 958, 631 N.E.2d at 1333. When disclosure of a fact is refused during cross-examination, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his defense. *Herrera*, 238 Ill. App. 3d at 291, 606 N.E.2d at 272.

■ Whether a State witness must disclose the exact location of a surveillance position on cross-examination is a question of first impression in Illinois. However, several other jurisdictions have recognized a "surveillance location privilege." In the District of Columbia, the surveillance location privilege has been upheld on the same rationale as that for the informant's privilege. *Hicks v. United States*, 431 A.2d 18, 21 (D.C. 1981); *Anderson v. United States*, 607 A.2d 490, 495 (D.C. 1992). In both situations, once a criminal becomes aware of the surveillance position or identity of the informer, the value of that tool to law enforcement is lost, and the lives of police officers and cooperative individuals are jeopardized. *Hicks*, 431 A.2d at 21. Federal courts have held the policy justifications analogous to those underlying the informer's privilege supported a qualified surveillance location privilege. *United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981); *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982). Massachusetts and Pennsylvania recognize the surveillance location privilege along the same grounds. *Commonwealth v. Lugo*, 406 Mass. 565, 570, 548 N.E.2d 1263, 1265 (1990); *Commonwealth v. Jennings*, 428 Pa. Super. 297, 305-07, 630 A.2d 1257, 1262 (1993).

In jurisdictions that recognize the surveillance location privilege, the privilege is not absolute. The extent of the privilege is a matter of discretion for the trial court. *Carter v. United States*, 614 A.2d 913, 915 (D.C. 1992). Generally, the defendant may overcome the privilege

by making a strong showing that the disclosure of the location is material or necessary to his defense and that his need for the information outweighs the public's interest in keeping the location secret. *Jennings,* 428 Pa. Super. at 306-07, 630 A.2d at 1262; *Lugo,* 406 Mass. at 570-72, 548 N.E.2d at 1265-67; *Harley,* 682 F.2d at 1020; *cf. Anderson,* 607 A.2d at 495 (disclosure of identity).

We conclude a qualified privilege exists for the disclosure of secret surveillance locations. To hold otherwise would seriously cripple legitimate criminal surveillance and endanger the lives of police officers and those who allow their property to be used for criminal surveillance. If secret surveillance positions are revealed, building owners who may have previously consented to the use of their property for surveillance purposes may withdraw their consent. Property owners should be encouraged to tender their property and buildings for effective law enforcement purposes. *Green,* 670 F.2d at 1155.

However, we also recognize the importance of the accused's right to test the credibility of identification witnesses. We conclude the standard used for determining whether the identity of an informant should be disclosed is an appropriate standard for determining whether a secret surveillance location should be revealed. Disclosure should be decided on a case-by-case basis, balancing the public interest in keeping the location secret with the defendant's interest in preparing a defense. *Cochrane's of Champaign, Inc.,* 285 Ill. App. 3d at 33, 673 N.E.2d at 1180. The defendant must demonstrate a need for disclosure, not mere speculation that the information may possibly prove useful. *Cochrane's of Champaign, Inc.,* 285 Ill. App. 3d at 33, 673 N.E.2d at 1180. A trial court should also "endeavor to protect the public interests that give rise to the surveillance location privilege, while also taking any steps necessary to ensure accurate fact finding." *Green,* 670 F.2d at 1156. This means that even if defendant cannot overcome the surveillance location privilege, defense counsel should be permitted to cross-examine the police officers' observations with respect to distance, weather, and any possible obstructions. See *Green,* 670 F.2d at 1156.

■ In the present case, defendant did not make an adequate showing that the exact location of the surveillance posts was essential to his defense. Particularly important is Officer Beuschlein's testimony that he saw defendant arrested immediately after he saw defendant's last transaction with the black female. Defendant did not go inside or leave Officer Beuschlein's sight from the time of the transaction to the time of his arrest. This refutes defendant's claim that he had just stepped outside prior to being arrested and casts strong doubt on his claim of mistaken identity. The exact location of the surveillance

would not have cast additional doubt on the officers' version of events or changed the finding of probable cause.

Defense counsel was given sufficient latitude to test the officers' credibility. Defense counsel was allowed to elicit from Officers Walton and Beuschlein the distance, lighting, and any possible obstructions of the officers' view. There was no evidence or reason to believe the officers' testimonies were not credible. The trial court did not abuse its discretion or violate defendant's constitutional rights by allowing the State a qualified privilege with respect to the surveillance location.

Accordingly, we affirm the judgment of the circuit court of Champaign County.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.