THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD PARCHMAN, Defendant-Appellant.

First District (5th Division)   No. 1—97—3587

Opinion filed December 18, 1998.

J. Randall Epstein, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Barbara L. Jones, and Joanne M. Rogers, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:
Following a jury trial, defendant Reginald Parchman was found

guilty of armed robbery and home invasion and sentenced to two concurrent nine-year sentences. Defendant appeals, arguing that he is entitled to a new trial because (1) the prosecutor made improper comments during closing argument; (2) the State improperly withheld evidence; and (3) the trial court improperly limited his right to cross-examine the State's key witness. We affirm.

The State charged defendant with several offenses related to allegations of an armed robbery of Shan Wang at 8022 South Ellis in Chicago. The case proceeded to trial on the charges of home invasion in violation of section 12—11(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12—11(a)(1) (West 1996)) and armed robbery in violation of section 18—2 (720 ILCS 5/18—2 (West 1996)).

At trial, Wang testified that he moved into an apartment on South Ellis in August 1996. He did not know anyone in the neighborhood, but eventually met people in the building and neighborhood. He was introduced to defendant by a neighbor who lived in the building next to defendant's building. In October of 1996, he saw defendant fairly frequently. They spoke and exchanged greetings periodically. On one occasion Wang gave defendant a ride to school and back. On at least two occasions, defendant was a guest at Wang's apartment with several other friends and acquaintances. Wang estimated that defendant stayed an hour or two on each occasion and the group socialized, played cards, watched television, and smoked marijuana. Wang had also seen defendant in the building visiting other people. Defendant was a good friend of a person named Lamont, who lived upstairs.

On October 29, 1996, as Wang was getting ready for school at approximately 7:45 a.m., he heard a knock on the door and he asked who was there. He heard a male voice claiming to be Lamont, looked through a peephole in the door and saw an African-American male whom he did not recognize. He assumed, however, that Lamont was standing next to him. When Wang opened the door slightly, it was forcibly pushed open and two men entered. One man wore a ski mask and the other did not. He identified defendant as the man who wore the ski mask. Defendant put a gun to Wang's head and Wang heard defendant cock the gun. Defendant told Wang it was a "stick up" and demanded Wang's money.

Wang testified that he instantly knew it was defendant behind the mask. Despite the mask, Wang could see his eyes, eyebrows, the shape of his mouth, and other physical features. Wang also stated that as soon as defendant spoke he recognized his voice. Wang stated that at first he thought it was a terrible joke and was tempted to ask defendant what he was doing. However, he said nothing, deciding that if defendant knew that he had been recognized, he might kill him. Wang

stated that the other intruder was in his mid 20s, heavyset, bald, and wore a green jumpsuit. Wang had never seen him before.

After the two men entered the apartment, they closed the door. Defendant continued to hold the gun at Wang's head and demanded his wallet. Wang had the proceeds of a student loan in his wallet, and Wang was reluctant to give it to defendant. Wang feigned that he did not know the whereabouts of his wallet and defendant became upset. Wang told defendant that the wallet might be in the closet and he and the other man went to look for it. Wang pretended to look through his clothes. Defendant then ordered him out of the closet. Defendant kicked at a pair of Wang's pants and Wang's wallet fell out in plain view. Defendant took Wang's wallet, which contained approximately $1,100, an alien card, a social security card, a driver's license, credit cards, pictures, and other memorabilia. The other man took Wang's video cassette recorder (VCR).

Defendant pointed the gun at Wang and ordered him into the bathroom. After he heard the men run down the stairs, Wang came out of the bathroom and called the police. Wang estimated that the whole incident lasted approximately 10 to 15 minutes.

The police arrived in about 10 minutes and Wang identified defendant as one of the persons who had entered the apartment. He informed the officer that defendant lived down the street and he gave her a description. Wang rode in the back of the police car while the officer drove down the street and Wang identified the area where defendant lived. Wang was not sure as to which of two buildings on Ellis, but he was certain that it was one of them.

After the police had left, Wang discovered that his compact disc player was also missing. He believed defendant took it from his bag on the couch while Wang and the other man were searching the closet. Wang testified that he then canceled his credit cards. On November 7, 1996, Wang went to the police station, viewed a lineup, and identified defendant as the person who pointed the gun at him and took his money.

On cross-examination, Wang stated that his apartment had been burglarized a few weeks before this incident and he had reported it to the police. At that time, he lost over $2,000 worth of jewelry, a computer, an answering machine, speakers, checks, and a miniature stereo. He did not have the VCR at the time. He bought the VCR from the mother of a friend on October 28, 1996. Defense counsel attempted to inquire as to how often Wang smoked marijuana, but the court sustained objection to the question. Wang also stated on cross-examination that he initially opened the door to his apartment after he heard a deep African-American voice that he assumed belonged to Lamont.

The State called Officer Gloria Holcomb, who testified that on October 29, 1996, she responded to a robbery call and spoke to Wang. She learned that he had been robbed by two people who had forced their way into the apartment. Wang knew the name of one of the people to be "Reggie." He described him as a black male between the ages of 14 and 16, about 5 feet 10 inches tall, and approximately 150 pounds. He was medium complected with brown eyes and black hair. Reggie was wearing a face mask, purple sweatshirt, and black sweatpants. Wang stated that he was acquainted with Reggie and that Reggie had been in his apartment before. Wang gave Holcomb an approximate address of where Reggie lived. Wang was unable to identify the second offender, but described him as a black male, about 6 feet and approximately 225 pounds. He wore a green jumpsuit, was light complected, and had black hair. Wang was not acquainted with the second offender.

The State called Detective William Higgins, the officer who conducted the lineup, to testify. He stated that there were six individuals in the lineup, including defendant. The detective was in the room when Wang identified defendant as the man who robbed him. Defendant was then placed under arrest. Higgins learned that defendant lived at 7928 Ellis. He was 16 years old, 5 feet 9 inches, 125 pounds, and had brown eyes. On cross-examination, the officer stated that the police never recovered any of the stolen property. Nor did they recover the gun or a ski mask.

Willie Gaines testified as a witness for the defense. He stated that he is a teacher at Chicago Vocational High School and that defendant was a student in his second-period class. The class started at 8:54 a.m. and he takes attendance sometime after 8:57 a.m. Gaines could not recall specifically seeing defendant in class on October 29, 1996, but his attendance record indicated that defendant was present for class that day.

James Jones testified for defendant. He stated that he met Wang in August of 1996. They played video games together, smoked marijuana, and talked. Jones spoke with Wang on the morning of October 29, 1996. Wang told him that someone had robbed him and Wang said that he believed it was defendant. Wang said that he knew him by his voice. Thomas Theodore also testified for defendant. He stated that he knew Wang and they had played video games, smoked marijuana, and ridden in cars together. He spoke with Wang after the incident on October 29, 1996, and Wang told him that he thought defendant was the robber. He said that he knew it was defendant because of the way he talked and the way he walked.

Officer Michelle Carter testified for defendant. She took the report

of a burglary on October 13, 1996, from Wang. Wang told her that various miscellaneous items of jewelry had been taken, a computer, a monitor, a printer, an answering machine, a Sony compact disc player, and 100 checks.

Defendant testified on his own behalf. His entire direct examination was as follows:

"MR. DRY [Defense Attorney]: Q. Sir, could you please state your name?

THE WITNESS: A. Reginald Parchman.

Q. And your birthday?

A. 11-29-79.

Q. When were you born, Mr. Parchman?

A. November 29, 1979.

Q. Where do you live?

A. I live at 7928 South Ellis.

MR. DRY: I have no further questions, Judge.

MS. SAVINI [Assistant State's Attorney]: Judge, I have nothing based on that."

The State then presented a rebuttal witness, Thomas Haas, a teacher at the Chicago Vocational School. Haas taught physical education in October 1996 and defendant was enrolled in his class. Defendant attended the class on only one day, November 11, 1996. The class started at 8 a.m. and ended at 8:50.

The jury found defendant guilty of armed robbery and home invasion. The trial court denied defendant's motion for a new trial and sentenced him to nine years in the Department of Corrections for each count with the sentences to run concurrently.

Defendant first argues that several statements made by the prosecution during closing argument violated his statutory and constitutional privilege against self-incrimination. The State contends that any objection to these comments has been waived.

■ It is well settled that a defendant must raise an objection at trial and in a written posttrial motion to properly preserve issues for review. *People v. Enoch*, 122 Ill. 2d 176 (1988). Defendant did not object to the comments during closing argument. While he generically raised the issue of improper comments in his motion for new trial, this court has held that general and vague allegations in a posttrial motion are not sufficient to overcome waiver. See *People v. Brown*, 267 Ill. App. 3d 482, 484 (1994); *People v. Buchanan*, 211 Ill. App. 3d 305, 312 (1991). Thus, this issue should be considered waived.

■ Defendant urges this court to review the issue pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), which permits review of "[p]lain errors or defects affecting substantial rights *** al-

though they were not brought to the attention of the trial court." Plain error analysis may be applied where the evidence is closely balanced or where the error is of such magnitude that it denied the accused a fair and impartial trial. *People v. Buckley*, 282 Ill. App. 3d 81, 88 (1996), citing *People v. Ward*, 154 Ill. 2d 272 (1992).

The evidence in this case could not reasonably be said to have been closely balanced. The State put forth an eyewitness to the crime, Wang, who testified that he recognized defendant as the man who forced his way into his apartment, pointed a gun at him, and took his money. Although defendant was wearing a mask, Wang testified that he knew it was defendant because he could see his eyes, mouth, and other physical features. He also identified defendant's voice. Wang immediately told the responding officer that it was defendant who robbed him and he recounted the same information that day to two other individuals.

Defendant offered alibi evidence that he was in school at the time of the robbery. While one teacher testified that his attendance record indicated that defendant was in class at about 9 a.m. on October 29, 1996, that teacher did not have an independent recollection of seeing defendant in class that day. Further, defendant's first-period teacher testified that defendant was not present for his 8 a.m. class, which was at the time of the robbery. Thus, this evidence did little to rebut the complainant's testimony and the jury essentially only had to decide if it believed Wang to find that the State sustained its burden of proof.

■ Defendant contends that this court must reverse the conviction because the prosecutor's error is of such magnitude that it deprived him of a fair and impartial trial. "A reviewing court will grant relief under this prong of the plain error rule only if the error is so fundamental to the integrity of the judicial process and so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error. [Citation.] Otherwise, defense counsel could obtain a reversal *** simply by failing to object and by design depriving the trial court of the opportunity to prevent or correct the error." *People v. Herrett*, 137 Ill. 2d 195, 215 (1990), citing *People v. Carlson*, 79 Ill. 2d 564, 577 (1980).

■ A criminal defendant has a constitutional right (see *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965)) and a statutory right (see 725 ILCS 5/115—16 (West 1996)) not to incriminate himself. *People v. Nino*, 279 Ill. App. 3d 1027, 1038 (1996). Any comment that is intended to direct the jury's attention to a defendant's failure to avail himself of the right to testify violates the defendant's right to remain silent. *Nino*, 279 Ill. App. 3d at 1038, quoting *People v. Dixon*, 91 Ill. 2d 346, 350 (1982).

■ At the very end of the assistant State's Attorney's closing rebuttal argument, she stated:

> "The Defendant is an armed robber. He is a home invader, and he is a coward. He is a coward. *He cannot even get up on that witness stand and look you in the eye and deny that.* Maybe if we gave him a mask, he could do it because he has something to hide behind, but he couldn't even do that. All he could tell you was his name, his address, and his date of birth. He couldn't tell you where he was at 8:00 o'clock on October 29, 1996, because he would have to admit he was in [Wang's] apartment robbing him and committing a home invasion. Because of that, you should find him guilty of both of those charges." (Emphasis added.)

The comment that "[h]e cannot even get up on that witness stand and look you in the eye and deny that" clearly violates the prohibition against commenting on the failure of an accused to testify. It is a direct comment on his failure to testify.

Although such error is a constitutional violation, it does not inevitably require that defendant receive a new trial. *People v. Howard*, 147 Ill. 2d 103, 147-48 (1991). A reviewing court will affirm a criminal conviction if upon examination of the record the court determines that the error was harmless. *Howard*, 147 Ill. 2d at 148.

The evidence of guilt in this case was very strong. The State presented the testimony of Wang, who detailed the events and identified defendant. While he stated that defendant wore a mask during the crime, Wang testified that he knew it was defendant, and several witnesses confirmed that Wang immediately identified defendant as the man who robbed him. Defendant's witness indicated that he was in class at 9 a.m. that day. But, he was not present for his 8 a.m. class. Defendant attempted to suggest that Wang made up the crime because he had no receipt for the VCR, because he may have failed to report one of the credit cards as stolen, and because he failed to immediately report that his compact disc player was also taken. However, defendant did not substantiate the assertions and Wang's testimony either refuted these assertions or offered reasonable explanations for the allegedly suspicious facts.

Furthermore, the record indicates that the jury was instructed that the closing statements of counsel are not evidence. The jury was also properly instructed as to the presumption of innocence. That instruction specifically stated that "[t]he State has the burden of proving the guilt of the Defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The Defendant is not required to prove his innocence."

Upon review of the record and upon reluctant realization that we

do not send a meaningful message to the overzealous prosecutor, we hold that the error was harmless in this case. Courts of review are often faced with the dilemma of how to send a message to the overzealous prosecutor without reversing an otherwise fair and appropriate trial.

We note that the fact that defendant testified in this case does not excuse the prosecutor's comment. When a defendant takes the witness stand and testifies on his own behalf, he waives his privilege not to testify and subjects himself to legitimate cross-examination. See *Brown v. United States*, 356 U.S. 148, 156, 2 L. Ed. 2d 589, 597, 78 S. Ct. 622, 627 (1958) (if a defendant takes the stand to testify on his own behalf, his credibility may be impeached and his testimony assailed like that of any other witness; the breadth of his waiver of the privilege is determined by the scope of relevant cross-examination); *United States ex rel. Irwin v. Pate*, 357 F.2d 911, 915 (7th Cir. 1966) (if defendant voluntarily takes the stand to testify in his own behalf, his testimony may be impeached and he may be cross-examined; the extent of the waiver of the privilege is determined by what defendant's testimony makes relevant for cross-examination); see also *People v. Dawson*, 57 Ill. App. 3d 712, 715 (1978) ("If the defendant takes the witness stand, he assumes the role of a witness and as such becomes subject to cross-examination in the same manner and to the same extent as any other witness"); *People v. Burris*, 49 Ill. 2d 98, 104 (1971) ("The defendant who takes the stand and testifies in his own behalf in a criminal case not only offers himself as a witness in his own behalf but thereby subjects himself to legitimate cross-examination"). However, because defendant's direct examination was extremely limited here, he did not open the cross-examination as to any substantive questions concerning the offense.

■ Defendant next contends he is entitled to a new trial because the State withheld evidence during discovery. Defendant complains that the State failed to produce materials sought during discovery that would have led to material with which he could have impeached the State's key witness, Wang.

At trial, Wang testified that he had two credit cards stolen. During a side bar conference, defense counsel complained that Wang did not produce documentation as to multiple credit cards during discovery. Wang stated that he showed the assistant State's Attorney statements from both his Discover card and the Visa card but that the only documentation that she requested was information regarding the Visa card.

Defendant now contends that the State violated a specific discovery order that requested documentation as to the stolen credit cards and

that the State violated Supreme Court Rule 412(c) (134 Ill. 2d R. 412(c)), which requires the State to disclose "any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged." However, a new trial should only be granted if the defendant was prejudiced by the discovery violation and the trial court failed to eliminate the prejudice. *People v. Secor*, 279 Ill. App. 3d 389, 397 (1996). Even if the facts demonstrate a discovery violation by the State, defendant has not demonstrated prejudice requiring reversal.

Defendant suggests that the outcome of the case would have been different because "the fact that [Wang did] not report his own card as stolen is highly suspect." However, there is nothing to indicate that Wang in fact failed to report the Discover card stolen. Rather, Wang testified that, after making the report with the police, he canceled his "credit cards," indicating more than one card. Further, Wang testified that he in fact canceled the Visa card and the State offered a letter from the credit card company confirming that he did so. There is no reason to believe that he did not do the same with the Discover card. While defendant contends that the information regarding the Discover card could have led to impeachment material, he offers nothing to substantiate that claim beyond speculation. Defendant has not presented reversible error here.

■ Defendant also argues that he was denied a fair trial because the assistant State's Attorney failed to proffer Wang's prior record. Just prior to the start of the trial, the assistant State's Attorney moved to preclude defense counsel from questioning Wang as to a prior juvenile adjudication for misdemeanor possession. Defense counsel stated that he understood what happened with regard to that prior offense and stated that he did not intend to ask the witness about it. There was nothing further stated about this issue and it is not raised in the posttrial motion. This issue is waived. Moreover, defendant has failed to demonstrate any error requiring reversal on this point.

Defendant contends the trial court improperly limited his right of cross-examination. He argues that he was prejudiced because the trial court improperly precluded him from questioning Wang regarding his drug use and his ability to identify defendant. The State maintains that these issues have been waived because defendant failed to make an offer of proof when the court sustained objections to defense counsel's questions.

■ In *People v. Andrews*, 146 Ill. 2d 413, 420-21 (1992), the Illinois Supreme Court stated:

> "[T]he key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court. [Citations.]

The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of the evidence was proper. [Citation.] The failure to make an adequate offer of proof results in a waiver of the issue on appeal."

While defendant cites numerous portions of the record in which objections to his questions were sustained, he has not pointed to any section demonstrating an adequate offer of proof so as to preserve the matters for review. Thus, these complaints are waived. However, even if we review the issue, we find no basis for reversal.

■ A criminal defendant has the right to confront the witnesses against him, which includes the right to cross-examine those witnesses. *People v. Criss*, 294 Ill. App. 3d 276, 279 (1998). A trial court may not deprive a defendant of the right to question a witness, but it may limit the scope of cross-examination. *Criss*, 294 Ill. App. 3d at 279. The latitude permitted is left largely to the discretion of the trial court, and its determination will not be overturned absent a clear abuse of discretion resulting in manifest prejudice. *Criss*, 294 Ill. App. 3d at 279-80. The trial court should give wide latitude to a defendant when questioning identification witnesses. *Criss*, 294 Ill. App. 3d at 280. Nevertheless, testimony may be excluded as irrelevant if it is remote, uncertain, or conjectural, and the trial court's decision concerning relevance and admissibility will not be disturbed absent a clear abuse of discretion. *People v. Smith*, 256 Ill. App. 3d 610, 617 (1994).

■ Defendant contends that the trial court improperly prohibited him from inquiring into Wang's drug use and his ability to identify defendant. Viewed in context, we find that the portions of the record to which he cites appear to be proper limitations on the scope of cross-examination. Many of defendant's questions sought remote, uncertain, or conjectural testimony or the phrasing of the questions was poor and defendant did not attempt to rephrase them. The record contained testimony as to Wang's ability to perceive defendant during the attack and Wang described the limited nature of his prior contacts with defendant. Defendant has not demonstrated a clear abuse of the trial court's discretion.

Defendant relies on *People v. Galloway*, 59 Ill. 2d 158 (1974), to support his argument that the trial court abused its discretion in limiting cross-examination as to Wang's drug use. In *Galloway*, 59 Ill. 2d at 160, the defendant was convicted of the unlawful sale of a narcotic drug. He argued that he was denied due process because the trial court refused to permit him to examine the arrest record of one of the State's witnesses who was a drug addict and former prostitute.

It was not until the time of appeal that the arrest record of the witness, whose credibility was key to the conviction, was revealed, demonstrating that she had been arrested over 80 times and she had several charges that were stricken around the time of the trial. *Galloway*, 59 Ill. 2d at 162-63. The court stated that the question of the credibility of the State's key witness was critical to the defense and it recognized the need for "close scrutiny in those cases where the State's case rests upon the credibility of a narcotics addict." *Galloway*, 59 Ill. 2d at 163.

There are major factual distinctions between *Galloway* and the case at hand. Most importantly, as this court has recognized, there is a difference between drug use and addiction. See *People v. Tomes*, 284 Ill. App. 3d 514, 522 (1996) (although evidence of drug addiction is admissible to impeach a witness, the trial court was within its discretion to limit the questioning of a witness about his drug use where there was insufficient evidence of addiction). In the instant case, the jury was well aware of Wang's drug use and defendant was permitted to question on the topic to some extent. Wang testified that he had not used drugs on the night before the crime. We do not find an abuse of discretion by the trial court in limiting the extent of questioning on this topic.

Finally, defendant contends that the cumulative impact of various errors deprived him of a fair trial. See *People v. Speight*, 153 Ill. 2d 365, 376 (1992) (while individual trial errors may not require reversal, those same errors considered together may have the cumulative effect of denying defendant a fair trial). Defendant has failed to demonstrate errors depriving him of a fair trial. While we recognize that the prosecutor's comment was error, we do not believe it or any of the other alleged errors affected the outcome of this case. We affirm the convictions and sentences.

Affirmed.

HOURIHANE, P.J., and HARTMAN, J., concur.