THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRAVIS STOKES, Defendant-Appellant.

First District (2nd Division)    No. 1—07—2022

Opinion filed March 31, 2009.—Rehearing denied July 7, 2009.

336

Aliza R. Kaliski, of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Miles J. Keleher, and Marilyn Salas Wail, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from defendant Travis Stokes' conviction of possession of a controlled substance with intent to deliver and his resulting 10-year Class X sentence following a bench trial.

Briefly stated, the evidence at trial established that on November 7, 2006, at approximately 12:30 a.m., Officer Frank Sarabia was part of a narcotics surveillance team working in the area of 3600 West Grenshaw in Chicago. Sarabia received information about narcotics sales on that block 10 to 15 minutes prior to conducting the surveillance. He was one of the surveillance officers and saw defendant at approximately 12:40 a.m. from a distance of about 150 feet. Sarabia's surveillance took place from a covert location which was outside a private residence in that block and was elevated three to four stories from the ground. No other specifics were provided about his location, and the trial court sustained the State's objection when the defense attempted to question him further about his surveillance point. Sarabia testified that although it was dark outside, there were streetlights, and from time to time he used binoculars. When he first saw defendant, defendant was standing next to another man, who was later identified as codefendant Jerome Stokes.

Sarabia subsequently saw defendant speak to an unknown female pedestrian, who had approached him and gave him an unknown amount of money, which defendant put into his right jacket pocket. Defendant then escorted the woman across the street, left her at the sidewalk, and disappeared into a gangway at 3633 West Grenshaw. Sarabia could not see defendant once he entered the gangway, but defendant reappeared approximately 20 seconds later and gave a small item to the woman, who then walked away in a different direction. Defendant went back across the street and stood next to Jerome. Sarabia testified that he witnessed four such transactions, but he never saw what the small items were which defendant gave to the women, and the women were not detained. He further testified that he never saw anyone else enter the gangway during that time.

During the surveillance, Sarabia was in contact with two other law enforcement officers and another surveillance officer, Officer Wrigley. Sarabia alerted Wrigley each time defendant went into the gangway. During the fourth transaction, either Sarabia or Wrigley sent the other officers to approach defendant and Jerome, and defendant was ultimately detained for a field interview. Sarabia gave the law enforcement officers a description of defendant as follows: brown jacket with a hood, dark brown sweat pants, and shorter and stockier than Jerome. The description of Jerome was similar, except he wore jeans and was taller and skinnier than defendant.

Officer John Wrigley testified that during the surveillance, Sarabia asked for his help, so he obtained a covert vehicle. He parked the vehicle in the alley between Roosevelt Road and Grenshaw, which was slightly west of 3633 West Grenshaw, facing east. Sarabia advised him

that the "subject" was involved in drug sales, so he headed into the gangway. Wrigley positioned the vehicle near the gangway and saw defendant come from the gangway and go to a utility box located on the side of the house next to the gangway, about 5 or 5½ feet from the ground, which was "about the size of a sheet of paper." Defendant "manipulated" the box and took items from somewhere beneath it. Wrigley observed this action three times. In court, Wrigley testified that defendant resembled the person he had seen, but he stated it was "fair to say" that defendant and Jerome resembled one another. However, Wrigley also testified that he never saw anyone else enter or leave the gangway.

Officer Arnoldo Rendon testified that after speaking with Wrigley at approximately 1 a.m., he went into the gangway at 3633 West Grenshaw where Wrigley directed him to a utility box located on the east side of the building. The box was attached to the wall, which was a little higher than his face and roughly one foot by two feet. When he shined his flashlight on the box, he saw a strip of clear tape containing three yellow ziplock bags; each bag contained suspected crack cocaine. Rendon recovered the strip and bags, and then he and his partner, Officer Beyna, arrested defendant. At the station, Rendon inventoried the suspected narcotics.

Officer Thomas Beyna testified he arrived at 3632 West Grenshaw at approximately 1 a.m. and arrested defendant at the direction of either Sarabia or Wrigley. A custodial search yielded $28 in defendant's jacket pocket, but no drugs. Jerome was also arrested.

The parties stipulated that the Illinois State Police crime lab received the inventoried items in a sealed condition, and the results indicated cocaine. The estimated weight of the three bags was less than .2 grams. The parties also stipulated that a proper chain of custody was maintained at all times.

A directed finding was granted as to two counts alleging possession of a controlled substance with intent to deliver within 1,000 feet of a school. The defense then recalled Wrigley, who testified that he assisted in filling out the arrest reports for Jerome. Defense counsel's attempt to ask if the report said that the arresting officers saw Jerome in front of the building was objected to and sustained on the ground that the report was not impeaching. The trial court found that the officers' testimony was credible with only minor discrepancies and convicted defendant of possession of a controlled substance with intent to deliver. Following the denial of defendant's motion for a new trial, defendant was sentenced to a 10-year Class X sentence based upon his background, namely, that he had five felony narcotics cases beginning in 2003 and ending with the instant case in 2006; and he had received

probation numerous times and was sentenced to the Illinois Department of Corrections three times. His motion to reconsider the sentence was denied.

On appeal, defendant raises the following issues for our consideration: (1) whether the trial court impermissibly restricted his right to cross-examine Officer Frank Sarabia when he was precluded from questioning him about his surveillance location in contravention of this court's holding in *People v. Knight*, 323 Ill. App. 3d 1117 (2001); (2) whether the trial court erred in finding that he was statutorily eligible to be sentenced as a Class X offender under the recidivist provision (730 ILCS 5/5—5—3(c)(8) (West 2006)) even though he was 20 years old at the time of the offense; (3) alternatively, whether the recidivist statute violates equal protection and due process because it arbitrarily penalizes a defendant based upon the length of his trial court proceedings and violates the prohibition against *ex post facto* laws because it increases a defendant's sentence after commission of the crime; (4) whether his statutory right to elect sentencing was violated because he was not informed of his right to choose to be sentenced under the law in effect at the time of the offense or at the time of trial; (5) whether trial counsel was ineffective for failing to ensure that defendant went to trial before his twenty-first birthday and failing to ensure that defendant could elect between sentencing schemes; and (6) whether his Class X sentence violates due process and his jury trial rights because he was sentenced under section 5—5—3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 2006)) without a jury finding of facts other than his prior convictions.

■ Defendant first contends that the trial court impermissibly restricted his right to cross-examine Officer Sarabia by precluding him from questioning the officer about his surveillance location in violation of *People v. Knight*, 323 Ill. App. 3d 1117 (2001). Specifically, defendant asserts that the trial court erred by failing to hold an *in camera* hearing or to weigh the defense's need for the information against the public's interest in nondisclosure of the surveillance point, and he seeks reversal of the trial court's ruling and a new trial.

It is initially noted that although defendant objected at trial, he failed to raise this issue in his motion for a new trial, thus waiving the issue for review. *People v. Enoch*, 122 Ill. 2d 176, 189 (1988). However, this court may review an issue that has been waived under the plain error doctrine. 134 Ill. 2d R. 615(a). Under that rule, a ruling can be examined for plain error where the evidence is closely balanced or "where the error is of such magnitude that it denied the accused a fair and impartial trial." *People v. Parchman*, 302 Ill. App. 3d 627, 633

(1998). Under a plain error analysis, the alleged errors must first be examined to determine if error occurred, and if so, then determine whether they rose to the level of plain error. *People v. Herrett*, 137 Ill. 2d 195, 210 (1990).

This court has recognized that the right to confront a witness, including the right to cross-examine witnesses, is a fundamental right. *Knight*, 323 Ill. App. 3d at 1125. As such, this issue is not waived and can be considered under the plain error doctrine to determine if the surveillance location privilege is applicable.

Although a trial court may not deprive a defendant of the right to question witnesses, it may limit the scope of cross-examination under its discretionary powers. *Knight*, 323 Ill. App. 3d at 1122. See also *People v. Frieberg*, 147 Ill. 2d 326, 357 (1992); *People v. Criss*, 294 Ill. App. 3d 276, 279 (1998). In *Criss*, the court held that under certain circumstances, surveillance officers are not required to disclose established surveillance points on cross-examination, so long as the defendant is not denied his constitutional rights by the nondisclosure. *Criss*, 294 Ill. App. 3d at 280. The surveillance location privilege is not absolute; the extent of the privilege is left up to the trial court. *Criss*, 294 Ill. App. 3d at 280. A defendant may overcome the privilege by making a strong showing that the disclosure of the location is material or necessary to his defense and his need for the information outweighs the public's interest in keeping the location secret. *Criss*, 294 Ill. App. 3d at 280-81. Even where a defendant cannot overcome the privilege, defense counsel should be allowed to cross-examine the officer's observations as to distance, weather, and any other possible obstructions. *Criss*, 294 Ill. App. 3d at 281.

In *Knight*, this court noted that *Criss* involved construing the surveillance location privilege in the context of a motion to suppress, as opposed to during a trial, and held that it should be treated differently. *Knight*, 323 Ill. App. 3d at 1126. As such, the court found that a trial court should order an *in camera* hearing out of the presence of defendant and defense counsel. *Knight*, 323 Ill. App. 3d at 1127. During the *in camera* hearing, the State's witness must reveal the surveillance location from which the defendant was watched, and the State must make a preliminary showing that disclosure of the surveillance location would harm the public interests and should therefore remain privileged. *Knight*, 323 Ill. App. 3d at 1127. The *Knight* court further held that a qualified privilege exists at trial for the disclosure of a surveillance location, while noting that where a defendant's need for the location information is so great that the case against him turns almost exclusively on an officer's testimony, disclosure must almost always be ordered. *Knight*, 323 Ill. App. 3d at 1127-28 (the officer's testimony was uncorroborated).

In the instant case, during defense counsel's cross-examination of Officer Sarabia, the following colloquy occurred:

"[DEFENSE COUNSEL]: You were in a building, correct?

[OFFICER SARABIA]: That is incorrect.

[DEFENSE COUNSEL]: Were you on the roof of a structure?

[ASSISTANT STATE'S ATTORNEY (ASA)]: Objection.

THE COURT: Overruled.

[ASA]: Judge.

THE COURT: Basis.

[ASA]: I believe counsel is seeking to get the position of the surveillance point. I believe it is a covert position that may still be being used by the officer. I would ask if you're gonna inquire as to this location, we do it outside the presence of the defendant.

THE COURT: Officer, were you in a public location?

[OFFICER SARABIA]: I was on a private residence.

THE COURT: Were you inside a private residence or outside a private residence?

[OFFICER SARABIA]: Outside.

THE COURT: So you were not in a private residence?

[OFFICER SARABIA]: That's correct.

THE COURT: You were in a public location outside? Were you exposed?

[OFFICER SARABIA]: Yes, I was.

THE COURT: All right. And had you conducted surveillance at that location before?

[OFFICER SARABIA]: Numerous times.

THE COURT: Had you used that location that you were on before?

[OFFICER SARABIA]: Yes.

THE COURT: That you were stationed at?

[OFFICER SARABIA]: Yes, sir.

THE COURT: And was [sic] there other locations that you could have used?

[OFFICER SARABIA]: Yes.

THE COURT: That would have given you just as good access?

[OFFICER SARABIA]: This was the best.

THE COURT: That was the best?

[OFFICER SARABIA]: This was the best for that.

THE COURT: How many times had you used that location before?

[OFFICER SARABIA]: I have used that location at least ten times before, and probably 10 to 20 times since.

THE COURT: Do you intend to use it again?

[OFFICER SARABIA]: Yes, sir.

THE COURT: Did you have to obtain permission from some citizen to use that location?

[OFFICER SARABIA]: No, sir.

THE COURT: Sustained. Proceed."

From a review of the record, it is clear that the court failed to hold an *in camera* hearing outside defendant's presence regarding the surveillance location in order to determine if the privilege should apply, but it found that it did after a discussion with the officer on the record and in open court. That was clearly contrary to this court's holding in *Knight*, but the inquiry does not end there; a determination of whether the failure to hold an *in camera* hearing was plain or harmless error must now be made. See *Herrett*, 137 Ill. 2d at 210.

We first note that contrary to defendant's assertions, *Knight* does not stand for the proposition that he must be allowed to cross-examine an officer about an exact surveillance location. Instead, *Knight* simply holds that in a trial context, in order to determine whether the surveillance location privilege is applicable, the trial court should hold an *in camera* hearing to aid in making that determination, and further, where a defendant's need for the location information is so great that the case against him turns almost exclusively on an officer's testimony, disclosure must almost always be ordered. See *Knight*, 323 Ill. App. 3d at 1127-28.

In the case at bar, unlike *Knight*, the case against defendant did not turn exclusively on a single officer's testimony; several officers testified as to their part in the investigation and subsequent arrest of defendant. Officer Sarabia was the surveillance officer in the secret location who observed defendant making the four transactions. Each time defendant was approached by someone on the street, he would take money from that person and disappear into a gangway, emerge, and pass an item to that person. On four separate occasions, Officer Wrigley, the other surveillance officer, observed defendant enter the gangway and recover items from a utility box which was affixed to a building. Officer Rendon recovered the drugs from the utility box, and Officer Beyna was the arresting officer who detained defendant and recovered the money from his front pocket, as observed by Officer Sarabia. Although there was another man (Jerome) standing out there with defendant and he apparently resembled defendant, defendant is the only one who was observed making the transactions and recovering the drugs from the gangway. He was identified by at least two officers, Sarabia and Wrigley, and the money was recovered from his person. The identification of defendant was corroborated by each of the officers who testified to his roles in the investigation and arrest. Although the trial court did not hold an *in camera* hearing with respect to the surveillance location, it did question Officer Sarabia in open court about it. Considering the public's interest in keeping the surveil-

lance location a secret, the relative insignificance of the exact point of surveillance in light of the specificity uncovered on cross-examination and the court's examination (*People v. Quinn,* 332 Ill. App. 3d 40, 45 (2002)), and because the case did not turn exclusively on the uncorroborated testimony of a single surveillance officer, the failure to hold an *in camera* hearing was harmless error. We conclude the trial court did not abuse its discretion in minimally limiting defendant's cross-examination of Officer Sarabia.

■ Next, defendant contends that the trial court erred in finding he was statutorily eligible to be sentenced as a Class X offender under the recidivist provision (730 ILCS 5/5—5—3(c)(8) (West 2006)) even though he was 20 years old at the time of the offense. He argues that the provision must be interpreted to apply only if a defendant is 21 years or older when the offense is committed, not at the trial date.[1]

The construction of a statute is reviewed *de novo. People v. Davis,* 199 Ill. 2d 130, 135 (2002).

Section 5—5—3(c)(8) states as follows:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." 730 ILCS 5/5—5—3(c)(8) (West 2006).

This issue has been previously addressed by this court in *People v. Williams,* 358 Ill. App. 3d 363 (2005), and *People v. Baaree,* 315 Ill. App. 3d 1049 (2000). In both cases, much like the case at bar, the defendant was 20 years old at the time of his arrest but turned 21 prior to sentencing. *Williams,* 358 Ill. App. 3d at 365; *Baaree,* 315 Ill. App. 3d at 1051. In both cases, the defendant was mandatorily sentenced as a Class X offender pursuant to section 5—5—3(c)(8) and challenged the sentence on appeal.

In *Baaree,* the defendant challenged his mandatory Class X sentence by arguing that the phrase "when 'a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony' " was ambigu-

---

[1]Defendant does not dispute the fact that his criminal background otherwise makes him eligible to be sentenced as a Class X offender pursuant to section 5—5—3(c)(8).

ous because the term "is convicted" was subject to multiple interpretations. *Baaree*, 315 Ill. App. 3d at 1051. This court agreed, determining that the term "convicted" was ambiguous and finding:

"Under a plain reading of the statute, it appears that a defendant's age at the time of conviction is the deciding factor in determining whether the statute will apply. It is therefore necessary to determine what is meant by the term 'convicted.' " *Baaree*, 315 Ill. App. 3d at 1051.

This court held that for purposes of section 5—5—3(c)(8), a defendant is "convicted" when he is adjudicated guilty by the trial court. *Baaree*, 315 Ill. App. 3d at 1052-53.

In *Williams*, defendant sought interpretation of section 5—5—3(c)(8) so that it would be triggered when a defendant is over 21 years of age at the time the charged offense is committed, as with the defendant in this case. *Williams*, 358 Ill. App. 3d at 365. This court found that when *Baaree* was decided, the court resolved an ambiguity in section 5—5—3(c)(8) and also impliedly resolved the issue raised by the defendant because the court specifically found that " '[u]nder a plain reading of the statute, it appears that a defendant's age at the time of conviction is the deciding factor in determining whether the statute will apply.' " *Williams*, 358 Ill. App. 3d at 366, quoting *Baaree*, 315 Ill. App. 3d at 1051. Consistent with the holding in *Baaree*, the court in *Williams* found that "over the age of 21 years" for purposes of section 5—5—3(c)(8) referred to the time at which a defendant is "convicted" or adjudicated guilty and not the time when the offense was committed. *Williams*, 358 Ill. App. 3d at 366.

Turning to the instant case, the same result is mandated. Defendant turned 21 prior to the start of his trial and was thus 21 years of age when he was convicted or adjudicated guilty. As such, he became subject to the mandatory Class X sentencing provisions of section 5—5—3(c)(8), and the trial court did not err in sentencing him in accordance with it.

Alternatively, defendant contends the sentencing statute violates equal protection and due process because it arbitrarily penalizes a defendant based upon the length of his trial court proceedings and violates the prohibition against *ex post facto* laws because it increases a defendant's sentence after commission of a crime. Specifically, defendant argues that section 5—5—3(c)(8) creates two different classes of defendants: those who are under the age of 21 at sentencing and those who are over the age of 21 at sentencing, and stresses an interpretation of that statute which focuses on his age at the time the offense was committed.

The constitutionality of a statute is subject to *de novo* review. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). Statutes carry a strong presumption of constitutionality, and the party challenging the statute bears the burden of rebutting that presumption. *People v. Maness*, 191 Ill. 2d 478, 483 (2000). In the *Williams* case cited previously, this court considered and rejected a similar argument advanced by the defendant in that case, finding that the Class X offender provision was not subject to manipulation by the State because it was the trial judge in his or her discretion who decided whether to grant a continuance, not the State. *Williams*, 358 Ill. App. 3d at 367-68. As such, the court found that defendant's rights to due process and equal protection were not violated. *Williams*, 358 Ill. App. 3d at 368.

In the present case, defendant's argument rests upon his interpretation of section 5—5—3(c)(8), namely, it is a defendant's age at the time the offense is committed rather than when he is convicted that controls. As previously discussed, this issue has been considered and rejected by this court, and section 5—5—3(c)(8) is triggered at the time of conviction. *Baaree*, 315 Ill. App. 3d at 1051. In this case, defendant turned 21 prior to the commencement of trial and was, therefore, 21 years old at the time of his conviction, thereby making him eligible for Class X sentencing. Accordingly, defendant's argument is without merit.

■ Defendant further contends his statutory right to elect sentencing was violated when he was not informed of his statutory right to choose to be sentenced under the law in effect at the time the offense was committed or at the time of trial. This issue was not raised in defendant's postsentencing motion and is therefore waived. 730 ILCS 5/5—8—1(c) (West 2006). Defendant, however, contends the issue may be reviewed under the plain error doctrine. The plain error analysis is inapplicable here as defendant did not have the statutory right to election, and accordingly, no error occurred. The right to elect between sentencing schemes is not a constitutional right but is one conferred solely by statute. *People v. Grant*, 71 Ill. 2d 551, 561 (1978); *People v. Peoples*, 71 Ill. App. 3d 842, 845 (1979). Here, there was no change in the sentencing statute for defendant's offense between the time of the offense and the time of his sentencing; therefore, there was no statutory right to election. As such there was no error.

Defendant also contends that his trial counsel was ineffective for failing to ensure that he went to trial before he turned 21 years old and failing to ensure he could elect between the sentencing schemes.

■ To prevail on a claim of ineffective assistance of counsel, a defendant must meet both prongs of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

" 'The *Strickland* test requires that the defendant show that counsel's performance fell below an objective standard of reasonableness, and counsel's deficient performance resulted in prejudice to the defendant.' " *People v. Randle*, 277 Ill. App. 3d 788, 796 (1995), quoting *People v. Robinson*, 167 Ill. 2d 397, 405 (1995). The failure to satisfy either prong is fatal to a claim of ineffective assistance of counsel. *Randle*, 277 Ill. App. 3d at 796.

In the case at bar, the record establishes that defendant received effective assistance of trial counsel. Defendant was charged by information on December 12, 2006, while he was 20 years old. He was tried and convicted on the same day, April 17, 2007, 15 days after he turned 21 years old. Defense counsel requested two continuances during that time, first because defendant had just informed him that he had a witness, and secondly because that witness failed to appear. Defendant was tried within the time limits prescribed by statute and never objected to any delays. See *People v. Cordell*, 223 Ill. 2d 380, 392-93 (2006) (because defendant did not object to any of the delays in his trial, the delays are considered "agreed to" by defendant, and his claim of ineffective assistance of counsel fails). We have already concluded that defendant had no statutory right to elect between sentencing schemes, and thus, counsel could not be deemed ineffective for failing to preserve this right. It follows then that trial counsel cannot be ineffective for the reasons raised by defendant.

■ Finally, defendant contends his Class X sentence violates due process and his right to a jury trial because he was sentenced under section 5—5—3(c)(8) (730 ILCS 5/5—5—3(c)(8) (West 2006)) without a jury finding of qualifying facts other than his prior convictions. He maintains that the constitutionality of the Class X recidivist provision must be reexamined in light of the United States Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005).

The Supreme Court in *Shepard* concluded that the line of cases which holds that any fact other than a prior conviction sufficient to raise the limit of a possible federal sentence must be found by a jury absent a waiver by the defendant also applies to guilty pleas under the Armed Career Criminal Act (18 U.S.C. §924(e) (2000 and Supp. II)). *Shepard*, 544 U.S. at 19, 161 L. Ed. 2d at 213-14, 125 S. Ct. at 1259. Specifically, the Court found that any sentence under the Armed Career Criminal Act must rest on a showing that a prior conviction "necessarily" involved, and a prior plea necessarily admitted, facts equivalent to generic burglary without consideration of outside evidence unless previously considered by a jury. *Shepard*, 544 U.S. at 24, 161 L. Ed. 2d at 216, 125 S. Ct. at 1262.

Contrary to defendant's assertion, the *Shepard* case has no bearing on the case at bar. Here, defendant's presentence report and certified criminal history report indicated that he had prior felony convictions, none of which were based on guilty pleas. His trial counsel did not dispute that defendant's record contained the prior requisite felonies that made him eligible for a Class X sentence, nor does the record support any other conclusion. A review of the record does not reveal that the trial court considered any factors other than his prior convictions in determining his eligibility for Class X sentencing; the court specifically indicated that defendant was Class X eligible based on his background. Perhaps defendant confuses the trial court's consideration of factors in aggravation and mitigation in determining the length of his sentence with the factors used to determine his eligibility for Class X sentencing; however, the record does not support this conclusion. Accordingly, we hold that defendant's Class X sentence does not violate due process or defendant's jury trial rights because no factors were used to determine his eligibility other than his prior convictions.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

KARNEZIS, P.J., and CUNNINGHAM, J., concur.