THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL D. ANDERSON, Defendant-Appellant.

Fourth District No. 4—95—0879

Opinion filed November 15, 1996.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Timothy J. Huyett, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 1995, the State charged defendant, Michael D. Anderson, with unlawful possession with intent to deliver a controlled substance (more than 900 grams of a substance containing cocaine) (720 ILCS 570/401(a)(2)(D) (West 1994)). Defendant filed motions to suppress certain evidence and his statements pertaining thereto, which the trial court denied. In August 1995, defendant waived his right to a jury trial and submitted to a stipulated bench trial. The court found him guilty as charged and, in October 1995, sentenced him to 30 years in prison and ordered him to pay various fines.

Defendant appeals, arguing that the trial court improperly considered his refusal to implicate others as an aggravating factor at sentencing. We affirm.

I. BACKGROUND

In February 1995, the Illinois State Police received a tip that a

maroon Nissan carrying six kilograms of cocaine left Chicago around 12:30 p.m. en route to St. Louis. The driver of the vehicle was described as male, black, and paraplegic. An Illinois State trooper who was patrolling Interstate 55 received that message and watched for the described automobile. When it drove by, the officer noticed that the driver was wearing headphones. The officer then made a traffic stop of the vehicle for that reason.

Defendant was the driver and sole occupant of the vehicle, and a license check revealed that his driver's license had been suspended. Defendant was also male, black, and paraplegic. The officer arrested defendant for driving with a suspended license, and a later search of the Nissan revealed three kilograms of a powdery substance containing cocaine in a duffel bag in the trunk. Subsequent testing showed the cocaine to be 88% pure.

In August 1995, defendant filed a motion to suppress the physical evidence obtained from the stop of the vehicle, but the trial court denied that motion. Defendant also moved to suppress statements he made at the scene; the court denied the motion in part and granted it in part.

Later in August 1995, defendant indicated he wished to proceed on the basis of a stipulated bench trial. The trial court admonished him in accordance with Supreme Court Rule 402(a) (134 Ill. 2d R. 402(a)), accepted his waivers of various procedural rights, and found him guilty as charged. The court ordered a presentence investigation and allotted the matter for sentencing in October 1995. Because of the quantity of the substance involved, defendant was convicted of a "super Class X" offense, meaning that the court was required to sentence defendant to prison for not less than 15 years and not more than 60 years. See 720 ILCS 570/401(a)(2)(D) (West 1994).

Prior to the sentencing hearing, defendant's lawyer filed a document entitled "defendant's commentary on sentencing factors," which contained both an assessment of various sentencing factors and an argument regarding why the court should impose a lesser sentence upon defendant. At one point in that document, defendant wrote that, "[g]iven the facts of the case, the [c]ourt, [d]efendant and [p]rosecution fully recognized that a stipulated bench trial was tantamount to a guilty plea. However, it was necessary to follow that procedure in order to preserve defendant's appellate rights as to the motion to suppress." In that document, defendant further argued the following:

> "Probably more than any other factor the [c]ourt must consider is the [d]efendant's acceptance of responsibility. His actions in the stipulated bench trial are the first step toward rehabilitation.

These actions demonstrate an attitude deserving of lesser punishment."

At the sentencing hearing, defendant's counsel continued with that same theme, claiming defendant's willingness to proceed by a stipulated bench trial constituted "[i]n a very real sense [his] acceptance of responsibility by preserving his constitutional right on the appeal in terms of the suppression."

The State's Attorney disagreed with this view of the case and argued that because defendant possessed with intent to deliver three kilograms (or six pounds and six ounces) of cocaine with a purity level of 88%, the trial court should sentence him to the maximum term of 60 years in prison. The State's Attorney also suggested that the court should infer, from the amount of cocaine involved, that defendant was "a player" in the "game of delivery of narcotics and cocaine." The prosecutor argued as follows:

"He's a hauler. You cannot get entrusted with over six pounds of a substance this pure containing cocaine unless you have developed a position of trust within whatever community it is that deals in this category of cocaine."

Emphasizing the cocaine's purity and that it could be further diluted three times or more, the prosecutor contended that the cocaine seized from defendant's car had a street value of $900,000.

Noting that 15 years was the minimum sentence required by law, defendant's counsel responded that the trial court should impose a sentence closer to the minimum than the sentence the prosecutor recommended. Defendant's counsel also asked the court to consider defendant's unfortunate physical condition, where he became a paraplegic after being shot in his neighborhood some years earlier.

Defendant, who was 31 years old at the sentencing hearing, had informed the probation office during its presentence investigation that he had used marijuana on a regular basis for many years but that he did not use cocaine or other "harder drugs."

This was the context in which defendant exercised his right of allocution. As he did so, the trial court asked him certain questions. Because the sole issue defendant presents on appeal concerns those questions, we quote at length from the dialogue between defendant and the court, as follows:

"[Defendant]: I understand what I am being charged with and what I have been found guilty of. *** It was a one-time thing *** and I am sorry for making that bad decision that I did make.

THE COURT: You indicated it is a one-time thing. What does that mean?

A. That that was it. I have never done it before and it most likely won't happen again.

THE COURT: Why did you do it?

A. Pressure.

THE COURT: What was the pressure?

A. Trying to maintain my family.

THE COURT: In what way?

A. Support. Finances.

THE COURT: What were you to be paid for this?

A. What were [sic] I being paid for this? It wasn't like what the state's attorney is saying it is. It wasn't that at all.

THE COURT: What was it?

A. $1,000.

THE COURT: You were going to be paid $1,000 upon your delivery of these drugs?

A. And for one thing, I didn't know the quantity that was in the car. I didn't know that because I didn't put it in the car.

THE COURT: But you knew that the cocaine was in the car?

A. Yes.

\* \* \*

THE COURT: Who asked you or who was offering to pay you $1,000 to drive it?

A. Well, I would like to tell you, but I am scared for my family. If I say that, something will happen to them.

THE COURT: Well, that is a convenient excuse for hiding the truth.

A. This is true. I am not hiding the truth. I don't want anything to happen to my family.

THE COURT: What makes you believe that they will be harmed?

A. Because I know. I truly know.

THE COURT: That is your conclusion that you have come to, but frankly I can't accept a conclusion like that.

A. Well, I have been told.

THE COURT: What have you been told by who?

A. That I would have to take the responsibility for what I have done.

THE COURT: You mean somebody visited you in the jail and told you would have to take the responsibility?

A. No, this is beforehand.

THE COURT: So you went to Chicago to pick up these drugs for somebody who told you you were going to be responsible[,] and all you were going to get was $1,000[,] and you were risking a substantial number of years in prison?

A. I didn't know the years or the quantity that was in the car.

\* \* \*

THE COURT: Now how is it that somebody would approach you—who was not known for involvement with drugs—and entrust to you this kind of value in drugs?

A. I can't answer that. I don't know. I guess maybe they seen [*sic*] something in me. I don't know.

THE COURT: Maybe they knew about your marijuana use?

A. Maybe. That could be a possibility.

THE COURT: And you have chosen now to protect the person who contracted with you orally[,] apparently[,] to deliver those drugs[,] as opposed to telling the truth about who was involved in that?

A. For the sake of my family, yes.

THE COURT: Everybody has got to stand up.

A. I don't want anything to happen to my family. I made a bad mistake[,] and I am willing to be punished, but they shouldn't also be punished for the mistake I made. *** [T]hey are being punished now for me going to prison, but why should they be punished double for [my] saying what happened?

THE COURT: To the extent that you don't say that, that individual can continue to deliver drugs in your neighborhood and affect those kids that you were supposed to be protecting [by the various community activities defendant claimed to be involved in].

A. That is not what is going on.

THE COURT: Where is the cocaine?

A. Just because I live in a bad area doesn't mean I am going to participate in messing my area up. It wasn't going into my neighborhood. It was going to a better class neighborhood than what I live in.

THE COURT: How do you know that?

A. How do I know?

THE COURT: Uh-huh.

A. I just know it wasn't going to my neighborhood.

THE COURT: How do you know that?

A. Because I have never seen these individuals in my neighborhood.

THE COURT: [Defendant], it is disappointing to me that you would choose to protect an individual who would contract with you to deliver that amount of drugs. To that extent that you are protecting that person and allowing the crime—

A. I am not protecting that person; I am protecting my family.

THE COURT: That is your assumption[.]

A. Without me doing that—I am going to prison. If something happens to my family, you are not going to be able to protect my family.

THE COURT: Have they been injured?

A. The only way I can protect them is doing what I am doing now. I am going to prison[,] and then they get killed."

After this dialogue, the trial court immediately proceeded to impose sentence, remarking, in part, as follows:

"I have no reason to believe that anything [defendant] said with regard to the use of cocaine or his involvement with cocaine is not accurate, but I am severely disappointed by his choosing to protect the identity of the people involved because that suggests that those parties will now be free and have been free since February, 1995, to continue to transport, use, [and] sell illegal drugs. ***

Certainly the Defendant did not act under strong provocation. He voluntarily undertook to deliver the drugs, although he says he did not know the full amount and didn't know the potential liability, but we are not talking about a young, inexperienced kid; we are talking about a 31-year-old adult who was not inexperienced in the use of drugs, albeit perhaps not cocaine.

* * *

[Defendant has no prior record and] I don't know that any of the other aggravating factors apply. *** He has apologized to his family and thanked them for their support, but I suspect that is somewhat hollow when he is going to protect the person who is going to be able to bring drugs to your community.

* * *

*** I am severely disappointed by [defendant's] decision to protect his friend. Perhaps friend is too inaccurate a word, to protect the person who encouraged him to participate in this crime, but I think that the fact that he is protecting him must be considered in the sentence the Court is going to impose because to the extent that you protect that individual, you allow that person and those with whom he associates to continue to deliver drugs to your community."

After these remarks, the court sentenced defendant to 30 years in prison.

## II. ANALYSIS

On appeal, defendant concedes that the trial court may properly question a defendant at his sentencing hearing. See *People v. Iseminger*, 202 Ill. App. 3d 581, 560 N.E.2d 445 (1990); *People v. Jones*, 142 Ill. App. 3d 51, 491 N.E.2d 515 (1986). However, defendant argues that if he has a legitimate reason for refusing to respond to the court's inquiries (such as asserting his fifth amendment privilege against self-incrimination or his fear of retaliation), a court may not consider that refusal as an aggravating factor when imposing sentence. In the present case, defendant claims that the court improperly considered

as an aggravating factor defendant's refusal to implicate the others involved in his crime. Defendant argues that the court's doing so, among other reasons, led it to impose a 30-year prison sentence. We disagree with defendant and hold that (1) the trial court's inquiries were entirely proper; and (2) if the court considered defendant's refusal to implicate others as an aggravating factor at sentencing, the court would have been entirely justified in doing so.

In an attempt to support his claim that the trial court erred, defendant puts a narrow interpretation on *Iseminger* and *Jones*, two decisions of this court. In *Iseminger*, this court noted that numerous decisions of the United States Supreme Court and the Supreme Court of Illinois have held that the trial court at sentencing may search anywhere, within reasonable bounds, for facts tending to aggravate or mitigate the sentence. Further, because the defendant to be sentenced is frequently the *best source* for such information, "[i]t simply makes no sense to urge trial courts to take every reasonable step to prepare themselves appropriately for their important sentencing decisions, and then to cut them off from the best source of information." *Iseminger*, 202 Ill. App. 3d at 599, 560 N.E.2d at 456. Thus, we held that the trial court may properly ask questions of a defendant at his sentencing hearing, and "whether the defendant testifies or exercises his right of allocution is irrelevant to the need for the sentencing judge to be fully informed." *Iseminger*, 202 Ill. App. 3d at 599-60, 560 N.E.2d at 456. This court in *Iseminger* reversed and remanded for the trial court to address the defendant's after-the-fact fifth amendment claim regarding his refusal to answer the court's questions. In doing so this court implicitly agreed with the views Presiding Justice Knecht expressed in his specially concurring opinion that "[i]f defendant has a legitimate fifth amendment claim then the refusal to answer should not be considered in any way." *Iseminger*, 202 Ill. App. 3d at 605, 560 N.E.2d at 460 (Knecht, P.J., specially concurring). Other than approving the trial court's practice of questioning defendants at sentencing hearings, *Iseminger* did not address the matter at issue in the present case because here defendant claims he refused to testify out of fear for his family, not out of any fifth amendment concerns.

In *Jones*, the defendant was convicted of burglary, and the trial court sentenced him to four years in prison, as recommended by the State's Attorney. *Jones*, 142 Ill. App. 3d at 52-53, 491 N.E.2d at 516-17. At the sentencing hearing, the defendant asked for intensive probation supervision and blamed his criminal record of burglary and theft on his drug habit. The court then asked the defendant—repeatedly—from whom he obtained the drugs, and defendant consis-

tently evaded the question. *Jones*, 142 Ill. App. 3d at 54, 491 N.E.2d at 517-18. Finally, in response to the court's seventh inquiry regarding from whom he obtained the drugs, defendant stated that he did not want to say because if he informed the court and the conveyors of his drugs found out, they would likely try to kill him. After hearing that last response, the trial court stopped its questioning of defendant. This court in *Jones*, after concluding that the trial court's inquiry as to the source of defendant's drugs was "quite legitimate," noted this sequence and observed as follows:

"[H]ad the defendant been candid with the trial court and stated in answer to the first question that he feared untimely death should he name his source, the questioning would have terminated immediately." *Jones*, 142 Ill. App. 3d at 55, 491 N.E.2d at 518.

Based upon this observation by the appellate court and the fortuitous circumstance of when the trial court concluded its inquiries, defendant here draws the following conclusions: (1) if a defendant has a legitimate reason for refusing to respond to a trial court's inquiries, that refusal cannot be held against him at sentencing; (2) a defendant's fear of retaliation for himself or his family constitutes a legitimate reason for refusing to respond; and (3) a trial court errs if it considers such a refusal to respond as a factor in aggravation of sentence. We reject defendant's conclusions as applied to this case.

Assuming *arguendo* that a defendant who legitimately asserts his fifth amendment protections in response to a trial court's inquiry at his sentencing hearing may not be punished for doing so (but see *United States v. Frazier*, 971 F.2d 1076, 1087 (4th Cir. 1992) ("conditioning the acceptance of responsibility reduction [in sentencing] on a defendant's waiver of his Fifth Amendment privilege against self-incrimination does not penalize the defendant for assertion of his right against self-incrimination")), the situation presented in this case falls far short of that. Here, all we have is defendant's claim that the people who provided him with $900,000 worth of drugs will be aggrieved if he identifies them to the court, and his doing so might put his family in danger. We are unimpressed. Defendant's solicitude comes too late. Trafficking in narcotics is a dirty business, particularly in quantities like those involved here. The people who engage in this nefarious business are reprobates of one stripe or another, and one who deals with them places himself and his family at risk by doing so. We have no doubt that this defendant—and others who elect to become involved in narcotics trafficking—know all this *before* they choose to deal with such people. Thus, to the extent that defendant in this case (or the defendant in *Jones*) fears the consequences of identifying the people who supplied them with the narcotics, any

such consequences would be due to defendant's behavior, not to the court's actions. To be blunt, if defendant wished not to place his family in jeopardy, he should have stayed out of this dirty business *to begin with*. Having elected to get involved in it, he should not now come into court complaining about being put in the tough position of either identifying his accomplices or having the court view his refusal to do so as an aggravating factor at his sentencing.

In so holding, we add that we do not know—and we need not know—what measures, if any, were offered (or could have been offered) by the State in an effort to provide protection for defendant's family. We will not require the trial courts or the State to negotiate with convicted defendants on this point in an attempt to somehow assuage their concerns about safety, with the result that a defendant would be required to respond to a trial court's inquiries at his sentencing hearing *only* after the defendant's concerns had been mollified (or the record showed sufficient representations to have reasonably mollified them). Instead, we hold that a defendant has *no right* to refuse to answer the trial court's questions at the sentencing hearing except—*perhaps*—when fifth amendment concerns are legitimately implicated. As Presiding Justice Knecht correctly pointed out in his specially concurring opinion in *Iseminger*, a defendant who fails to respond to a trial court's inquiries at his sentencing hearing can appropriately be made to suffer the consequences when the trial court imposes sentence, because the court may properly consider such refusal an aggravating factor. *Iseminger*, 202 Ill. App. 3d at 605, 560 N.E.2d at 459 (Knecht, P.J., specially concurring).

In *People v. Bond*, 205 Ill. App. 3d 515, 563 N.E.2d 1107 (1990), the defendant was also convicted of unlawful possession of a large quantity of cocaine (although rather less than defendant in this case) and similarly complained on appeal about his 30-year prison sentence. In rejecting that argument and affirming his sentence, this court noted "the blatant violation of the drug laws of this State as shown in this record," and we quoted approvingly the following observation: " 'If narcotics traffic is a social and health hazard, then every narcotics dealer is a danger to society ***.' " *Bond*, 205 Ill. App. 3d at 519, 563 N.E.2d at 1109-10, quoting *Hansford v. United States*, 353 F.2d 858, 860 (D.C. Cir. 1965). We reaffirm the views expressed in *Bond* and cite them to encourage trial courts statewide to take the action that the trial court took in this case: require defendants who plead guilty (or who have admittedly pursued the equivalent of a guilty plea, as here) and are seeking a reduced sentence because of their "acceptance of responsibility" to *fully* accept that responsibility by revealing *everything* regarding their use of—or trafficking in—narcotics. We reaffirm what we stated in *Iseminger*, as follows:

"Even if the defendant's revealing [the sources of his narcotics] proved insufficient (as is likely to be the case) to assist law enforcement authorities in any way other than to provide them with information as to current drug trafficking in a particular area, the fact that defendant revealed the names of the people providing him with drugs is likely to strain his relations with those people. A benefit of these strained relations may be that defendant in the future might have difficulty obtaining drugs, thereby making it easier for him to 'go straight.' " *Iseminger*, 202 Ill. App. 3d at 600-01, 560 N.E.2d at 457.

We note that these views are fully in accord with those expressed by the United States Supreme Court, as follows:

"By declining to cooperate, [defendant] rejected an 'obligatio[n] of community life' that should be recognized before rehabilitation can begin. [Citation.] Moreover, [defendant's] refusal to cooperate protected his former partners in crime, thereby preserving his ability to resume criminal activities upon release." *Roberts v. United States*, 445 U.S. 552, 558, 63 L. Ed. 2d 622, 629, 100 S. Ct. 1358, 1363 (1980).

In *Roberts*, the Court concluded that the trial court properly considered, as an aggravating factor in imposing sentence, the defendant's refusal to cooperate with officials investigating a criminal conspiracy in which he was a confessed participant. *Roberts*, 445 U.S. at 561-62, 63 L. Ed. 2d at 631, 100 S. Ct. at 1365.

Although the dialogue at issue in the present case occurred when defendant exercised his right of allocution, that fact makes no difference to our holding. Thus, we reaffirm what this court wrote in *People v. Noble*, 201 Ill. App. 3d 1056, 1059, 560 N.E.2d 35, 37 (1990), as follows:

"Defendant contends the [court's] questioning after he declined his right of allocution could only hurt him. We disagree. *** [Defendant's election not to exercise his] right of allocution does not give defendant a right to deny the court access to accurate information needed for sentencing."

In conclusion, we note that the same judge presided in *Noble*, *Iseminger*, and the present case, and we commend the active role he has taken in the sentencing hearings in all three cases. For the reasons we have already stated—and which the United States Supreme Court has stated even better and more strongly—inquiries of defendants at sentencing hearings can play both a constructive and an important role, not only regarding that defendant's rehabilitation, but also in bringing other criminals to account. We urge this commendable practice to the consideration of other trial judges as they preside at sentencing hearings.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.