THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER D. SWANK, Defendant-Appellant.

Fourth District    No. 4—01—0970

Opinion filed December 5, 2003.

STEIGMANN, J., dissenting.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

In March 2001, defendant, Christopher D. Swank, pleaded guilty to burglary (720 ILCS 5/19—1 (West 2000)). In exchange for his plea, the State agreed to dismiss other charges but made no agreement with defendant regarding what sentence the trial court would impose. At the September 2001 sentencing hearing, the State recommended probation, but the court sentenced defendant to $4^{1}/_{2}$ years in prison. The court also ordered that defendant pay a $20 penalty under the Violent Crime Victims Assistance Act (725 ILCS 240/10 (West 2000)), $425.75 in restitution, and $326 in costs. That same day, the McLean County circuit clerk notified defendant that he also must pay a $375 fine. Later in September 2001, defendant filed a motion to reconsider his sentence, which the court denied.

Defendant appeals, arguing that (1) the trial court abused its discretion in sentencing him and (2) the circuit clerk improperly imposed the $375 fine. We reverse and remand for a new sentencing hearing before a different judge; we vacate the $375 fine; and we otherwise affirm.

## I. BACKGROUND

At the March 2001 guilty plea proceedings, the trial court

admonished defendant that (1) no agreement existed regarding what sentence the court would impose; and (2) if the court accepted his "open" guilty plea, it could sentence him to between three and seven years in prison. Defendant indicated that he understood the court's admonitions and without any reservations wished to plead guilty.

According to the factual basis the State provided for defendant's guilty plea, around 12:30 a.m. on July 23, 2000, Denise Stark and her eight-year-old son returned to their Bloomington residence to find defendant walking out of the unattached garage. Defendant, who had dated Stark for about two years but did not live with her, told Stark that he needed to talk with her. When defendant, Stark, and her son went inside the residence, Stark and her son noticed that a videocassette recorder (VCR) and a television were missing. Stark confronted defendant regarding the missing items, and he ran from the residence. Stark then contacted defendant at his grandparents' residence and told him to come back to her residence. Defendant returned and admitted that he (1) crawled through an unlocked kitchen window in Stark's residence, (2) stole her VCR and television, and (3) pawned the items.

The trial court accepted the State's factual basis, found that defendant had knowingly and voluntarily entered his guilty plea, and accepted the plea. The court then ordered that defendant submit to a drug test that day, and defendant informed the court that he had used marijuana while out on bond in this case.

Defendant failed to appear at his April 2001 sentencing hearing, and the trial court issued a warrant. Defendant was later arrested in Indiana, where he pleaded guilty to a retail theft charge. He was then returned to Illinois for sentencing in this case.

At the September 2001 sentencing hearing, the trial court took judicial notice of defendant's (1) Indiana conviction and (2) recent retail theft guilty plea (McLean County case No. 00—CM—551). The court also considered the presentence investigation report (PSI), which indicated, in pertinent part, as follows: (1) defendant admitted using marijuana on a weekly basis while awaiting sentencing in this case; (2) defendant's March 2001 drug screen was positive for marijuana; (3) defendant had unsuccessfully participated in drug-treatment programs; (4) defendant graduated from high school; (5) defendant had difficulty maintaining a steady job; and (6) defendant's criminal history included (a) a July 1993 retail theft conviction (McLean County case No. 93—CM—1124), (b) a September 2001 retail theft conviction (McLean County case No. 00—CM—551), and (c) several traffic convictions. The State recommended that the court sentence defendant to at least 30 months' probation, and defense counsel concurred with the State's recommendation and suggested that defendant receive credit

for time served. Defense counsel further recommended that defendant receive drug treatment because "the problem here is marijuana addiction." The court stated that it was inclined to agree with the probation recommendation but also noted that it could sentence defendant to up to seven years in prison.

In pertinent part, the following discussion then took place between the trial court and defendant:

"THE COURT: To be honest with you, when I looked at [the fact that you tested positive for cannabis in March 2001 and have twice sought treatment for drug addiction,] and now that I know there are two additional retail thefts while awaiting sentencing on this, I think a reasonable question might be why should I put you on probation? In the last 150 days, I couldn't trust you on bond. *** [Y]ou can't be trusted to be honest, not commit crimes, and not use illegal drugs, so how could I possibly put you on probation is a question I might ask. You stand up and tell me.

THE DEFENDANT: I think that—I mean part of my problem when I committed the crime was my drug use, you know, and I have been in jail for four months now. I have had a chance to clean out and my head to clear up. I haven't had the problem with drugs.

* * *

THE COURT: The problem, [defendant], since [your guilty plea], you went out and committed two more crimes of theft and you failed to appear, and we had to go clear to Indiana to get you. You left the State of Illinois in violation of bond. That is the problem. I mean you have had lots of chances to get your life cleaned up. You have been in residential [drug] treatment twice, in '96 and again in '97, right?

THE DEFENDANT: Yes.

THE COURT: Why were you in Indiana?

THE DEFENDANT: I went over there to look for work.

* * *

THE COURT: Did you call your attorney and tell her you would be back on what day?

THE DEFENDANT: I never told her.

THE COURT: So if they hadn't arrested you on that theft, you would still be in Indiana or someplace else?

THE DEFENDANT: No.

THE COURT: Given that history, how could I possibly trust you on probation?

THE DEFENDANT: I completed probation successfully before.

THE COURT: That is before you committed all these additional crimes and continued to use illegal drugs.

THE DEFENDANT: That structure in my life helped me in my life. It helped me live a productive life in society. That structure of probation, showing up once a month, twice a month.

THE COURT: Do you have a valid driver's license?

THE DEFENDANT: No, sir.

THE COURT: How did you get to Indiana?

THE DEFENDANT: A friend.

THE COURT: Who?

THE DEFENDANT: A guy named Mike.

THE COURT: Mike what?

THE DEFENDANT: Wilson.

THE COURT: Is he your drug supplier too?

THE DEFENDANT: No.

THE COURT: Who is?

THE DEFENDANT: They got arrested—

THE COURT: Don't play games. The guy who has been supplying you marijuana?

THE DEFENDANT: I don't know who they were. They got arrested. The house got raided.

THE COURT: [Defendant], you have been using drugs repeatedly for the last several months. Who is your supplier?

THE DEFENDANT: I didn't even know the guy's name.

THE COURT: I am not talking about the people in Indiana. I am talking about the people you used drugs with here.

THE DEFENDANT: Right. I used by myself.

THE COURT: Who provided the drug for you?

THE DEFENDANT: I don't even know the person's name.

THE COURT: [Defendant], you have been buying too much marijuana to tell me you don't know who the person is. If you don't tell me, then I am going to look at a prison sentence, a significant number of years.

About 10 years ago or 12 years ago, I sentenced a man named Anderson in Logan County. He got caught bringing a kilo of cocaine from Chicago to St. Louis. *** [A]t the time of the sentencing hearing[,] I asked him the same question and he declined to tell me, and I warned him. I will consider a 15-year sentence, but if you are going to lie to me and not tell me who the person is, I am going to consider a 30-year sentence. He persisted in refusing to tell me. I gave him a 30-year sentence in the state prison.

The [a]ppellate [c]ourt said those are exactly the questions a trial judge ought to ask a defendant in a drug case or a drug use case, and those are exactly the responses the judge ought to get, because to the extent you are going to protect a drug dealer out there, the [c]ourt must remove you from society. You are trying to protect your drug dealer so you can get out there and use drugs again.

THE DEFENDANT: That wasn't my intent.

THE COURT: To the extent you don't tell me who your drug dealers are, I am going to consider it against you. I have asked this question literally thousands of times each year for at least a decade, and [in] almost every case[,] the defendant finally stands up and says, 'okay, here is my drug dealer.'

Now you can choose not to, that is your choice, but you need to understand there will be a consequence.

THE DEFENDANT: My drug dealer got arrested.

THE COURT: I don't care if he got arrested. I didn't ask you if he got arrested. What is his name?

THE DEFENDANT: Troy.

THE COURT: Troy what?

THE DEFENDANT: I don't know his last name. I honestly don't know these people's last names.

THE COURT: Certainly convenient, isn't it?

THE DEFENDANT: Even if that is their [sic] real name.

THE COURT: How many times did you buy it from Troy?

THE DEFENDANT: More than a handful.

THE COURT: How many times did you buy from Troy?

THE DEFENDANT: Probably 30 times.

THE COURT: How much did you pay him each time on the average?

THE DEFENDANT: Twenty dollars.

THE COURT: Where did he live?

THE DEFENDANT: Over—

THE COURT: What is the address?

THE DEFENDANT: I don't know the address. It was off of Washington Street.

THE COURT: A lot of places are off of Washington Street. It runs clear through town.

THE DEFENDANT: By the old Bloomington Junior High School.

THE COURT: Where did you arrange to meet with him at those 30 times?

THE DEFENDANT: I just met him at his house. I think it was his mom's house. I don't remember the house number.

THE COURT: [Defendant], that doesn't sound like someone who is trying to be candid with the [c]ourt. Any other comments you want to make?

THE DEFENDANT: No, your Honor."

The trial court then gave defendant an opportunity to speak with defense counsel. The court again asked defendant if he had any comments, and defendant replied that he did not. The court then sentenced defendant to $4\frac{1}{2}$ years in prison, stating, in pertinent part, as follows:

"[Defendant], this is your first known felony offense, obviously a very serious offense, and the State has reduced a residential burglary charge to burglary. You have got a very long history of drug use and failed efforts at treatment and I believe you have not been candid with the [c]ourt here today. I think you have made every effort to avoid being honest regarding your drug suppliers."

That same day, the circuit clerk notified defendant that he must pay a $375 "McLean County" fine, pursuant to section 5—9—1 of the Unified Code of Corrections (730 ILCS 5/5—9—1 (West 2000)).

Later in September 2001, defendant filed a motion to reconsider his sentence, arguing that (1) the 4½-year sentence "was arbitrary and a result of the [trial c]ourt's anger at the defendant for lack of responses that the [c]ourt would consider adequate"; and (2) the sentence was excessive and failed to take into account defendant's rehabilitative potential and lack of criminal history. At an October 2001 hearing on defendant's motion to reconsider, defense counsel informed the court that defendant "was afraid to answer" the court's questions at sentencing regarding his drug source, but was now able to do so. After considering counsel's arguments, the court denied defendant's motion, and this appeal followed.

## II. ANALYSIS

### A. Defendant's Sentence

Defendant first argues that the trial court abused its discretion by sentencing him to 4½ years in prison. Specifically, defendant objects to the dialogue between himself and the trial court regarding his drug source.

In a series of cases, many of which involved this same trial judge, this court has addressed the application of the fifth amendment privilege to sentencing hearings. Most recently, in *People v. Anderson*, 284 Ill. App. 3d 708, 716, 672 N.E.2d 1314, 1320 (1996), we held that "a defendant has *no right* to refuse to answer the trial court's questions at the sentencing hearing except—*perhaps*—when fifth amendment concerns are legitimately implicated." (Emphasis in original.) See also *People v. Iseminger*, 202 Ill. App. 3d 581, 605, 560 N.E.2d 445, 460 (1990) (Knecht, J., specially concurring) (when a defendant properly exercises his fifth amendment rights, his refusal to answer should not be considered in any way); *People v. Olson*, 241 Ill. App. 3d 488, 492, 608 N.E.2d 913, 916 (1993) (a defendant at a sentencing hearing still enjoys a privilege against self-incrimination); *People v. Wacker*, 257 Ill. App. 3d 728, 733, 629 N.E.2d 764, 768 (1994) (trial court repeatedly told defendant he would not hold it against him if he did not identify his cocaine suppliers). A recent decision of the United

States Supreme Court makes it clear that the defendant does have a right to refuse to answer the trial court's questions at the sentencing hearing. *Mitchell v. United States*, 526 U.S. 314, 143 L. Ed. 2d 424, 119 S. Ct. 1307 (1999).

In *Mitchell*, the defendant, without any plea agreement, pleaded guilty to four counts of distributing cocaine. She put on no evidence at sentencing, nor did she testify to rebut the government's evidence about drug quantity. Testimony of codefendants put the defendant over the 5-kilogram threshold, thus mandating a minimum sentence of 10 years. One of the things persuading the court to rely on the testimony of the codefendants was the defendant's not testifying to the contrary. The district judge told defendant " ' "I held it against you that you didn't come forward today and tell me that you really only did this a couple of times." ' [Citation.]" *Mitchell*, 526 U.S. at 319, 143 L. Ed. 2d at 432, 119 S. Ct. at 1311. The Supreme Court reversed and remanded.

"Treating a guilty plea as a waiver of the privilege at sentencing would be a grave encroachment on the rights of defendants." *Mitchell*, 526 U.S. at 324, 143 L. Ed. 2d at 435, 119 S. Ct. at 1313. "We reject the position that either petitioner's guilty plea or her statements at the plea colloquy functioned as a waiver of her right to remain silent at sentencing." *Mitchell*, 526 U.S. at 325, 143 L. Ed. 2d at 435, 119 S. Ct. at 1313. Any effort by the State to compel the defendant to testify against his will at the sentencing hearing clearly would contravene the fifth amendment. *Mitchell*, 526 U.S. at 326, 143 L. Ed. 2d at 436, 119 S. Ct. at 1314; *Estelle v. Smith*, 451 U.S. 454, 463, 68 L. Ed. 2d 359, 369, 101 S. Ct. 1866, 1873 (1981). "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.' " (Emphasis in original.) *Estelle*, 451 U.S. at 462, 68 L. Ed. 2d at 368, 101 S. Ct. at 1872, quoting *Culombe v. Connecticut*, 367 U.S. 568, 581-82, 6 L. Ed. 2d 1037, 1046, 81 S. Ct. 1860, 1867 (1961).

The Supreme Court, in *Mitchell*, applied to the sentencing phase the normal rule in criminal cases that no negative inference from the defendant's failure to testify is permitted. *Mitchell*, 526 U.S. at 327-28, 143 L. Ed. 2d at 437, 119 S. Ct. at 1314-15. The Court expressed no view, however, on the separate question whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility, factors considered under the United States Sentencing Guidelines. *Mitchell*, 526 U.S. at 330, 143 L. Ed. 2d at 438-39, 119 S. Ct. at 1316.

The dissent reads *Mitchell* narrowly, to prevent the sentencing court from drawing adverse inferences from a defendant's silence only in determining " 'the facts of the offense' " (344 Ill. App. 3d at 750, quoting *Mitchell*, 526 U.S. at 330, 143 L. Ed. 2d at 439, 119 S. Ct. at 1316) for which he is being sentenced. That was certainly the situation in *Mitchell*, but *Mitchell* makes it clear its rule is broader than that:

"The concerns which mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing. Without question, the stakes are high: Here, the inference drawn by the District Court from petitioner's silence may have resulted in decades of added imprisonment. The [g]overnment often has a motive to demand a severe sentence so the central purpose of the privilege—to protect a defendant from being the unwilling instrument of his or her own condemnation—remains of vital importance." *Mitchell*, 526 U.S. at 329, 143 L. Ed. 2d at 437-38, 119 S. Ct. at 1315.

█ Even the Court of Appeals recognized that a defendant may plead guilty and retain the privilege not to testify at the sentencing hearing with respect to implication in other crimes. *Mitchell*, 526 U.S. at 320, 143 L. Ed. 2d at 432, 119 S. Ct. at 1311. Even in revocation proceedings, which are not criminal proceedings, a defendant is not required to answer questions that might incriminate him in future proceedings. *Minnesota v. Murphy*, 465 U.S. 420, 426, 79 L. Ed. 2d 409, 418, 104 S. Ct. 1136, 1141 (1984); *People v. Martin*, 226 Ill. App. 3d 753, 757, 589 N.E.2d 815, 818 (1992). A sentencing court cannot force a defendant, who has pleaded guilty to theft, to answer the question whether he ever murdered anyone. Nor can a sentencing court force a defendant, who has pleaded guilty to burglary, to identify the person who has supplied him with marijuana. That testimony would implicate defendant in other crimes.

It is true there may be an exception to the rule against drawing negative inferences from a defendant's failure to testify when silence may bear upon the determination of a lack of remorse or upon acceptance of responsibility. *Mitchell*, 526 U.S. at 330, 143 L. Ed. 2d at 438-39, 119 S. Ct. at 1316. Those possible exceptions, however, cannot be read so broadly as to swallow up the privilege. Again, a sentencing court cannot force a defendant, who has pleaded guilty to theft, to answer the question whether he ever murdered anyone. Defendant's failure to identify his drug supplier here had no bearing on his remorse or his acceptance of responsibility for the offense of burglary.

The dissent argues that defendant waived his privilege against self-incrimination in this case. That is not correct. The trial court had

no right to call defendant as a witness against his will ("You stand up and tell me").

> "A defendant in a criminal case or proceeding shall only at his or her own request be deemed a competent witness, and the person's neglect to testify shall not create a presumption against the person, nor shall the court permit a reference or comment to be made to or upon that neglect." 725 ILCS 5/115—16 (West 2002).

When a defendant takes the witness stand and testifies on his own behalf, he waives his privilege not to testify and subjects himself to legitimate cross-examination. *People v. Parchman*, 302 Ill. App. 3d 627, 635, 707 N.E.2d 88, 94-95 (1998) (First District). Defendant did not take the stand here and did not waive the privilege. The same was true in *Mitchell*. Defendant did not expressly assert the privilege there; she simply did not take the stand.

It is true that the fifth amendment privilege against self-incrimination is not self-executing. *Roberts v. United States*, 445 U.S. 552, 559, 63 L. Ed. 2d 622, 630, 100 S. Ct. 1358, 1364 (1980). That rule, however, is subject to exception when some coercive factor prevents an individual from claiming the privilege or impairs his choice to remain silent. *Roberts*, 445 U.S. at 560 n.6, 63 L. Ed. 2d at 630 n.6, 100 S. Ct. at 1364 n.6. The trial judge here first forced the defendant to speak about whether he should be granted probation by stating, "You stand up and tell me." Then, after switching topics to questions about defendant's drug supplier, the trial judge stated "If you don't tell me, then I am going to look at a prison sentence, a significant number of years." The judge continued, "To the extent you don't tell me who your drug dealers are, I am going to hold it against you," and "Now you can choose not to, that is your choice, but you need to understand there will be a consequence." There was coercion here, which impaired defendant's right to remain silent. The judge's coercive actions were sufficient "to deny the individual a 'free choice to admit, to deny, or to refuse to answer.' " *Garner v. United States*, 424 U.S. 648, 657, 47 L. Ed. 2d 370, 379, 96 S. Ct. 1178, 1183 (1976), quoting *Lisenba v. California*, 314 U.S. 219, 241, 86 L. Ed. 166, 182, 62 S. Ct. 280, 292 (1941).

Because we reverse defendant's sentence and remand for sentencing before a new judge, we need not address defendant's second issue, that the trial court accorded too little weight to mitigating factors.

■ Last, defendant argues that this court should vacate the $375 "McLean County" fine imposed by the McLean County circuit clerk because circuit clerks cannot impose fines. The State concedes that we should vacate the fine, and we accept the State's concession.

The imposition of a fine is a judicial act. "The clerk of a court is a

nonjudicial member of the court and, as such, has no power to impose sentences or levy fines." *People v. Scott*, 152 Ill. App. 3d 868, 873, 505 N.E.2d 42, 46 (1987) (Fifth District). Instead, the circuit clerk has authority only to collect judicially imposed fines. See 730 ILCS 5/5—9—1(c) (West 2000).

Because the circuit clerk lacked authority to impose the $375 fine, we vacate that fine. Having so concluded, we need not address defendant's alternative argument that he is entitled to a $675 credit against the $375 fine.

## III. CONCLUSION

For the reasons stated, we reverse defendant's sentence and remand for sentencing before a new judge and vacate the $375 fine imposed by the McLean County circuit clerk. We otherwise affirm.

Affirmed in part, reversed in part, and vacated in part; cause remanded with directions.

MYERSCOUGH, J., concurs.

JUSTICE STEIGMANN, dissenting:

When imposing a sentence, a trial court needs—and deserves—the most complete information possible about the defendant. Certainly, that information includes all evidence regarding a defendant's rehabilitative potential. And when, as in this case, the defendant cites his drug usage as a contributing factor to his criminality, the court cannot accurately assess his rehabilitative potential without gauging the likelihood that the defendant will refrain from drug use in the future. Because the majority decision deprives the trial court of this critical information, and does so without any compelling reasons, I respectfully dissent.

This court has long held that a trial court may question a defendant at sentencing regarding the source of his drugs and consider as a sentencing factor the defendant's refusal to give details regarding that source. In *People v. Jones*, 142 Ill. App. 3d 51, 491 N.E.2d 515 (1986), the defendant was before the trial court for sentencing on multiple burglary and theft convictions. The defendant's PSI indicated that he was addicted to cocaine and heroin. Defense counsel asked the court to sentence the defendant to intensive probation supervision so that he could get counseling. *Jones*, 142 Ill. App. 3d at 53, 491 N.E.2d at 517. In response to a question from the court, the defendant said that he had been using drugs two or three times each day during the last year. The court then asked the defendant from whom he obtained

the drugs. The defendant tried to evade the question but ultimately said, " 'if I was to tell who I got, bought [my] drugs from and they found out about it, they would more likely try to kill me, and I am pretty sure of it.' " *Jones*, 142 Ill. App. 3d at 54, 491 N.E.2d at 517. The court then sentenced the defendant to four years in prison. *Jones*, 142 Ill. App. 3d at 55, 491 N.E.2d at 518. On these facts, this court wrote, in pertinent part, as follows:

> "The defendant requested intensive probation supervision, and the court had a duty to determine the likelihood of success of such program in deciding whether such a program should be used for the defendant. The availability and source of defendant's drugs is of paramount importance in considering the probability of success of this program with defendant. If drugs were readily available, the likelihood of success would be remote. The court's inquiry was, therefore, quite legitimate." *Jones*, 142 Ill. App. 3d at 55, 491 N.E.2d at 518.

In *Iseminger*, 202 Ill. App. 3d at 597, 560 N.E.2d at 454-55, this court noted that a trial court at sentencing may search everywhere within reasonable bounds for facts that tend to aggravate or mitigate the offense. We thus reaffirmed that the trial court may appropriately question the defendant at sentencing regarding the source of his drugs. *Iseminger*, 202 Ill. App. 3d at 599-600, 560 N.E.2d at 456. In so doing, we stated, in pertinent part, as follows:

> "A sentencing judge faced with a defendant who blames his criminal behavior on drug abuse, but who does not reveal the sources of those drugs, may properly view the defendant's rehabilitative potential with skepticism. Under these circumstances, the sentencing judge might well have considerable difficulty finding either of the following mitigating factors to be present: the defendant's criminal conduct was the result of circumstances unlikely to recur, or the character and attitudes of the defendant indicate that he is unlikely to commit another crime." *Iseminger*, 202 Ill. App. 3d at 601, 560 N.E.2d at 457.

In *Anderson*, 284 Ill. App. 3d at 716, 672 N.E.2d at 1320, we held that trial courts should

> "require defendants who plead guilty (or who have admittedly pursued the equivalent of a guilty plea, as here) and are seeking a reduced sentence because of 'acceptance of responsibility' to *fully* accept that responsibility by revealing *everything* regarding their use of—or trafficking in—narcotics." (Emphases in original.)

We further held that "a defendant has *no right* to refuse to answer the trial court's questions at the sentencing hearing except—*perhaps*—when fifth amendment concerns are legitimately implicated." (Emphases in original.) *Anderson*, 284 Ill. App. 3d at 716, 672 N.E.2d

at 1320; see also *Olson*, 241 Ill. App. 3d at 491, 608 N.E.2d at 916 ("We reject defendant's argument that the court's questioning [about his drug use] was an abuse of discretion. In the absence of a claim of the privilege against self-incrimination, a trial judge may properly make inquiries of a defendant at a sentencing hearing, irrespective of whether defendant testifies or exercises his right of allocution").

At the sentencing hearing in this case, defendant told the trial court that one of the reasons he committed the burglary was because of his drug problem. Defense counsel specifically asked the court to sentence defendant to probation and order drug treatment because "the problem here is marijuana addiction." Thus, the court was faced with a defendant who blamed his criminal behavior on his drug use and asked the court to impose probation rather than sentence him to prison. The court then properly questioned defendant, who neither objected nor asserted his fifth amendment right, regarding the source of his drugs. When defendant refused to reveal his dealer's identity, the court appropriately considered defendant's refusal to reveal his drug source as it reflected upon his rehabilitative potential.

The majority concludes that the United States Supreme Court's decision in *Mitchell* requires us to abandon this court's long-standing position. I disagree. In that case, the Supreme Court held that a defendant retains the privilege against compelled self-incrimination through the sentencing phase of a criminal trial. The *Mitchell* Court also held, in pertinent part, as follows:

> "The Government retains the burden of proving *facts relevant to the crime* at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege. *Whether silence bears upon* the determination of a *lack of remorse*, or upon *acceptance of responsibility*[, factors considered under the United States Sentencing Guidelines,] is a *separate question*. It is not before us, and we express no view on it." (Emphases added.) *Mitchell*, 526 U.S. at 330, 143 L. Ed. 2d at 438-39, 119 S. Ct. at 1316.

The *Mitchell* Court thus expressly (1) limited its holding by prohibiting the sentencing court's use of a defendant's silence against him "in determining the facts of the offense at the sentencing hearing"; and (2) refused to decide whether a defendant's silence at sentencing "bears upon the determination of a lack of remorse, or upon acceptance of responsibility for the purposes of the downward adjustment" to the defendant's sentence. *Mitchell*, 526 U.S. at 330, 143 L. Ed. 2d at 438-39, 119 S. Ct. at 1316. Thus, the Supreme Court simply did not determine the extent to which a court may consider a defendant's silence as it pertains to sentencing factors, such as lack of

remorse, rehabilitative potential, acceptance of responsibility, or willingness to comply with probation conditions.

As a final matter, it is important to note what this case does *not* involve. This case does not present the following issues:

(1) If a trial court questions a defendant at sentencing on the source of his drugs, is the defendant's privilege against self-incrimination self-executing? Defendant does not argue that the trial court's questioning of him at sentencing comes within an exception to the general rule that a witness must timely invoke the fifth amendment privilege to enjoy its protections, and we thus do not have the benefit of the parties' briefs and arguments on this issue.

(2) If a defendant asserts his fifth amendment privilege during sentencing, is it then appropriate for the trial court to consider the defendant's silence as a factor in determining whether the defendant is a suitable candidate for probation? As earlier noted, defendant did not assert his fifth amendment privilege at sentencing.

Simply put, this case is no different from *Jones* or the cases cited by the majority, in which this court upheld the trial court's authority to question a defendant at sentencing regarding his drug source. Issues arising under the fifth amendment require a nuanced assessment. See, for example, *McKune v. Lile*, 536 U.S. 24, 41, 153 L. Ed. 2d 47, 62, 122 S. Ct. 2017, 2028 (2002) (adverse consequences faced by a state inmate for exercising his fifth amendment privilege and refusing to make admissions required for participation in a sexual abuse treatment program were not so severe as to amount to compelled self-incrimination); *People v. Lindsey*, 199 Ill. 2d 460, 771 N.E.2d 399 (2002) (probationer's testimony at his probation revocation hearing was not a violation of his privilege against self-incrimination under the state constitution where he did not face a realistic threat that his answers would incriminate him in any further proceeding); *People v. Allen*, 107 Ill. 2d 91, 104, 481 N.E.2d 690, 696 (1985) (in a sexually-dangerous-person proceeding, the defendant was not entitled to refuse to answer a psychiatrist's questions that might incriminate him). Accordingly, because these issues are not now before us (and, indeed, have not arisen over the last 17 years since this court's decision in *Jones*), we should leave their resolution for another day.