NOTICE
Decision filed 06/24/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230062-U

NO. 5-23-0062

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 22-CF-517 |
| | ) | |
| JERRION C. GIPSON, | ) | Honorable |
| | ) | Adam M. Dill, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:   There was sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. The admission of inadmissible hearsay identification testimony amounted to plain error where the defendant was denied a fundamental right to confront his accuser, and therefore, the defendant's convictions are reversed and the cause is remanded for a new trial.

¶ 2    After a jury trial, the defendant, Jerrion C. Gipson, was found guilty of three counts of aggravated reckless driving. He received two eight-year sentences and a four-year sentence in the Illinois Department of Corrections (IDOC), to be served concurrently. The defendant claims on appeal that the State failed to prove, beyond a reasonable doubt, that the defendant was the driver of the vehicle involved in the collision, that he was denied a fair trial where a hearsay statement was improperly admitted, and the State failed to prove beyond a reasonable doubt that one of the victims sustained great bodily harm. The defendant additionally claims that this matter should be

1

remanded for a preliminary *Krankel* hearing. For the following reasons, we reverse the defendant's convictions and sentences and remand for a new trial.

¶ 3                                    I. BACKGROUND

¶ 4     On April 26, 2022, a Chevrolet Impala was speeding near a school in a residential neighborhood. The vehicle disregarded a stop sign and crashed into a Subaru Forester driven by Risa Shimokawa. Risa's two minor daughters were in the Subaru with her. Passengers from both vehicles were taken to the hospital after the collision. The defendant was arrested and charged by information with three counts of aggravated reckless driving resulting in bodily harm (625 ILCS 5/11-503(a)(1), (c) (West 2020)) to Risa and her two children.

¶ 5     A jury trial was held on August 31, 2022, and September 1, 2022. Risa Shimokawa testified that the incident occurred at approximately 3:15 p.m. on April 26, 2022. Risa was driving the Subaru with her two children inside, after picking up her oldest daughter from elementary school. They approached an intersection, and the cross street had a stop sign. Risa testified that as she drove through the intersection, a loud car approached from her right side, failed to stop, and struck her vehicle at full speed causing Risa's vehicle to spin around. She did not see the driver of the vehicle that struck her Subaru.

¶ 6     Risa testified that her older daughter was thrown from the Subaru and was found in a bush near the corner of the intersection. Risa described her older daughter's injuries, indicating that her mouth filled with blood, she lost teeth, had fractured teeth, and suffered abrasions on her face, legs, and elbows, as well as a hematoma on her forehead. Risa's three-year-old daughter remained in the vehicle during the collision. Her arm was visibly injured. It was determined later at the hospital that the arm had multiple fractures.

¶ 7   Risa additionally testified that she was also injured in the collision. Risa sustained bruising to her left arm and right hip. No fractures were diagnosed on Risa on the day of the incident. Two days later, Risa noticed a sharp pain in the area of her right rib. Nine days after the incident, Risa saw a doctor and she was diagnosed with a broken rib. The State presented a stipulation, People's Exhibit 10, without objection, which outlined the injuries sustained by the three passengers in the Subaru.

¶ 8   Joseph Cassidy, an Urbana police officer, was dispatched to assist with the car crash on April 26, 2022. Officer Cassidy testified that when he arrived on the scene, "it was extremely chaotic." He noted that a Subaru was heavily damaged and that the vehicle's airbags had deployed. The other vehicle had flipped over onto the passenger side and was engulfed in flames. Several people involved in the crash were lying on the grass, including the defendant.

¶ 9   Officer Cassidy testified that he assisted the individuals involved in the crash immediately after arriving on the scene. He first "ran" to the Subaru and discovered that no one was inside. Then, he "ran" to assist the defendant. Officer Cassidy held the defendant's head in case he had a neck injury until EMS could assist. During that encounter, the defendant provided his name to Officer Cassidy. Officer Cassidy identified the defendant in the courtroom. The following transpired without objection:

> "Q. While you were assisting the defendant, did you get a good look at his hairstyle?
> A. I did.
> Q. Could you describe how it looked that day?
> A. Extremely similar to how it is today, with twists or dreads about chin length. So, yeah, collection of hair strands to appear as thick strands.
> Q. While you were on scene, did a witness point him out to you as the driver?
> A. Yes.
> Q. Did this cause you to speak to him further at the hospital?
> A. Yes.
> Q. Did you confront him with this fact that a witness pointed him out as the driver?
> A. I did.
> Q. Did he tell you where he was when the vehicle crashed?

3

A. [The defendant] said he was in the front passenger seat of the vehicle during the crash."

Officer Cassidy further testified that the defendant refused to provide the name of the individual who was allegedly driving the vehicle. Officer Cassidy was not questioned regarding any additional interviews he may have conducted with witnesses at the scene. He was not asked to identify the witness who had pointed out the defendant as the driver.

¶ 10     La-Vonna Williams testified that on April 26, 2022, as she was driving her automobile, a black Impala approached her from behind. The vehicle caught her attention because it was speeding, and she could see in her rearview mirror that the driving was erratic. The Impala pulled up behind her quickly and then passed her vehicle. After the Impala passed her, the driver "floored it, and blew the stop sign." The driver then "t-boned a small SUV" in the intersection. La-Vonna testified that she saw the driver of the Impala in her rearview mirror. She described the driver as wearing dark colors, a baseball cap, and his hair was in small ear-length "dreads." The front passenger was also wearing dark colors and someone in the back of the car was wearing white. La-Vonna was unaware of whether any of the other passengers in the Impala were wearing baseball caps.

¶ 11     La-Vonna also testified that after the collision, a man wearing a white shirt was helping everyone out of the Impala. She was not sure if the person in the white t-shirt was the driver because she saw the driver wearing dark clothing. The State did not ask La-Vonna to make an in-court identification of the defendant as the driver.

¶ 12     Alexis Brown testified that she was driving in the area of the school on April 26, 2022. After leaving the elementary school parking lot, she noticed a black sedan speeding down the road. The driver of the car was "swerving to avoid parked cars." Alexis was heading west, and the speeding vehicle was heading east. When the black sedan passed her car, she saw the driver. He

4

was wearing a white t-shirt and had "dreads." She was aware that there were passengers in the vehicle but was unable to provide a description of the other passengers.

¶ 13    After the collision, Alexis assisted the driver in the green SUV. A child who was approximately two years old was in the back seat of that car. Alexis removed the child from the SUV and placed her into Alexis's vehicle. Alexis continued to watch the child while her mother looked for her other child who had been ejected from the SUV during the collision. Alexis observed that a person wearing a white t-shirt was pulling passengers from the other vehicle. He pulled the passengers through the sunroof because the vehicle was on its side against a tree. Alexis spoke to the police officers who arrived on the scene and pointed out the driver to the officers. The State did not elicit an in-court identification of the defendant as the driver from Alexis.

¶ 14    Officer Bryan Fink, an Urbana police officer, also responded to the scene of the crash on April 26, 2022. Officer Fink testified that he went to the hospital as part of his investigation. While there, he took photographs of the three individuals from the Subaru. Fink also spoke with the defendant at the hospital. Fink was told by the defendant that he had exited the car first and then helped the other passengers out of the vehicle. The defendant additionally informed Fink that the defendant had been sitting in the front passenger seat of the car. The defendant identified two individuals who were sitting in the back seat, and the defendant identified the driver. Fink testified that he did not believe that the defendant was a passenger in the car because he was the registered owner of the vehicle. Fink could not recall if the seating arrangement of the other passengers was ever determined.

¶ 15    Fink also took photographs of the four occupants of the Impala. Those photographs were admitted into evidence as People's Group Exhibit 6 and published for the jury. Fink identified Nicholas Griffin in a photograph. That photograph was taken with a body camera at the scene.

5

Griffin was wearing a black coat and he had two thin short ponytails sticking straight up from the top of his head. Fink also identified photographs he had taken of Prentiss Jackson, Malando McMillion, and the defendant while they were being treated in the hospital. At that time, Jackson, McMillion, and the defendant were no longer dressed in the clothes worn during the collision. In these photos, the defendant has a chin-length "dread" hairstyle, while Jackson and McMillion do not.

¶ 16    Before the State rested its case, two surveillance videos were introduced into evidence through stipulations. The first video depicted the smoking Impala lying on the passenger side against a tree. When the video began, the defendant was standing outside of the vehicle, and the three other passengers remained inside the Impala. The inside of the vehicle was not shown in the video and the passengers were not visible. The defendant removed his black coat with white sleeves before helping the other three passengers. He was wearing a white t-shirt, no baseball cap, and his hairstyle was short "dreads." The video depicted the defendant running around the car and then he kicked the glass on top and pulled on it to remove the sunroof. He pulled the three other passengers from the vehicle, yelled for 911, and directed the passengers to stay away from the smoking car after they had exited the vehicle. The three other passengers were all black men wearing dark colors. A white t-shirt was visible under a dark coat of one of the passengers in the video.

¶ 17    The second video depicted the speeding Impala running through the stop sign and hitting the Subaru. The passengers in the Impala were not visible in the second video.

¶ 18    After the State rested, the defense made a motion for a directed verdict, which the circuit court denied. The defendant testified, on his own behalf, that he was sitting in the passenger seat of the car at the time of the incident and that he had never claimed to be the driver. He had taken

6

a video with "Snapchat" on April 26, 2022, and testified that the video was taken 20 to 30 minutes prior to the accident. A screenshot from the video was admitted as Defendant's Exhibit 1, which depicted the defendant in the passenger seat and McMillion as the driver. The defendant testified that he shared ownership of the car with McMillion, who had paid half of the car's purchase price, and they both drove the car. The defendant admitted, however, that he was the only one named on the vehicle registration. The defendant also testified that he did not tell the police officer that McMillion was driving until after the police officer claimed that the defendant was the driver.

¶ 19 The defendant testified the vehicle flipped during the collision and McMillion had fallen on top of the defendant because the defendant's door was on the ground. The defendant climbed out of the driver's side window and was the first person to exit the Impala. He then pulled off the sunroof and assisted the other passengers exit the vehicle, which was on fire. McMillion went to the porch of a nearby house. After everyone was out of the Impala, he heard a girl crying and found her behind a bush. The defendant testified that he tried to help keep the girl calm until the paramedics came to assist. Then, the defendant lay down on the grass until Officer Cassidy assisted the defendant.

¶ 20 After the defendant testified, the parties presented closing arguments. During the jury deliberation the circuit court received a question from the foreperson which stated, "Officer Cassidy testified that the witnesses identified defendant as the driver? Which witness?" In response, the circuit court answered, "The testimonial evidence you may consider consists only of the testimony received at trial. Please rely on your own recollection of the evidence presented and continue your deliberations."

¶ 21 The jury found the defendant guilty of all three counts of aggravated reckless driving. The defense filed a motion for acquittals or, in the alternative, a motion for a new trial. The defense

argued that the guilty verdicts were against the manifest weight of the evidence and that no rational jury could have found that the State had proven the defendant guilty beyond a reasonable doubt. The circuit court denied the defendant's motion.

¶ 22    The circuit court sentenced the defendant to two eight-year sentences and one four-year sentence in IDOC for the three counts of aggravated reckless driving for causing great bodily harm. The sentences were to run concurrently. The defendant was also fined and ordered to pay restitution in the amount of $12,976.27. The defense filed a motion to modify and reconsider the sentence. The circuit court granted the motion to modify to allow the defendant to receive day-for-day credit on his sentence and otherwise denied the motion to reconsider the sentence.

¶ 23    The defendant additionally filed a *pro se* motion for reconsideration where he claimed that his trial counsel was ineffective for failing to present exculpatory evidence. The circuit court refused to consider a *pro se* motion filed by a represented defendant and denied the defendant's motion. This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, the defendant initially argues that the State failed to prove his guilt beyond a reasonable doubt. The defendant claims that the occurrence witnesses provided vague and conflicting descriptions of the driver, and that inadmissible hearsay bolstered the State's identification evidence. The defendant also claims the State failed to prove beyond a reasonable doubt that Risa Shimokawa sustained great bodily harm.

¶ 26    The defendant was convicted of three counts of aggravated reckless driving. "A person commits reckless driving if he or she:

> (1) drives any vehicle with a willful or wanton disregard for the safety of persons or property[.]" 625 ILCS 5/11-503(a)(1) (West 2022).

"Every person convicted of committing a violation of subsection (a) shall be guilty of aggravated reckless driving if the violation results in great bodily harm or permanent disability or disfigurement to another." 625 ILCS 5/11-503(c) (West 2022).

¶ 27   A defendant may challenge the sufficiency of the evidence to sustain a verdict on appeal. In reviewing the sufficiency of the evidence, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. VanHoose*, 2020 IL App (5th) 170247, ¶ 24. And the reviewing court "must allow all reasonable inferences from the record in favor of the prosecution and will not overturn the decision of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *VanHoose*, 2020 IL App (5th) 170247, ¶ 25. When considering the sufficiency of the evidence, the reviewing court will not retry the defendant. *People v. Gray*, 2017 IL 120958, ¶ 35. It is the role of the trier of fact to assess the credibility of the witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. *Gray*, 2017 IL 120958, ¶ 35. Accordingly, a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the credibility of witnesses and the weight of the evidence. *Gray*, 2017 IL 120958, ¶ 35; *People v. Grunin*, 2022 IL App (1st) 200598, ¶ 49.

¶ 28   The State must prove beyond a reasonable doubt that the defendant was the person who committed the crime in addition to proving each element of the crime. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). "An identification which is vague or doubtful is insufficient to support a conviction." *People v. Lewis*, 165 Ill. 2d 305, 356 (1995).

¶ 29   In this case, there was sufficient evidence to find that the defendant was guilty of aggravated reckless driving beyond a reasonable doubt. The State presented evidence to show that the Impala was registered to the defendant. The occurrence witnesses testified that they noticed

9

that the Impala was being operated at a high rate of speed and moving erratically. Both witnesses observed the driver of the Impala, and both observed that the driver's hairstyle was in "dreads." Photographic and video evidence showed that the defendant had a chin-length "dread" hairstyle, and that none of the other occupants of the Impala had a similar hairstyle. At trial, the defendant appeared similar to his appearance in the videos. Additionally, the defendant wore a coat with white sleeves on it and the driver of the vehicle was described as wearing white by at least one witness. Following the crash, the defendant's vehicle came to rest on its passenger side against a tree. The defendant was the first person to get out of the vehicle. He climbed out through the driver's side window and began to assist the other occupants exit through the sunroof. One of the police officers who responded to the crash scene testified, without objection, that he spoke with a witness who identified the defendant as the driver of the Impala. Based upon this evidence, and the reasonable inferences therefrom, the jury could have reasonably concluded that the defendant was driving the Impala at the time of the crash. Additionally, the jury could have reasonably concluded that the defendant's testimony that he was a passenger in the vehicle was not credible. The jury had the opportunity to assess the credibility of the witnesses, including the defendant, as they testified, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. We will not substitute our judgment for that of the jury on those matters.

¶ 30    Likewise we find that the State presented sufficient evidence to prove that Risa Shimokawa sustained great bodily harm as a result of the crash. There was evidence that the air bags deployed as a result of the collision. Risa testified that she felt immediate pain in her right side and that the pain did not subside over the next several days. She also described the bruising and abrasions on her left arm and right hip. A photograph taken of Risa at the hospital depicted a large bruise and

10

abrasions on her upper left arm. The parties stipulated that the initial x-rays, taken on the day of the crash, did not reveal any fractures, and that x-rays taken nine days later revealed a fractured rib on her right side. Based upon this evidence, and the reasonable inferences therefrom, the jury could have reasonably concluded that Risa sustained great bodily harm as a result of the crash.

¶ 31 To be sure, this was a close case. But after viewing the evidence and the reasonable inferences therefrom in a light most favorable to the State, we find that the evidence that the defendant was the driver of the Impala was sufficient, as presented to the jury, to find the defendant guilty of aggravated reckless driving beyond a reasonable doubt.

¶ 32 Next, the defendant argues that it was error for Officer Cassidy to testify that the defendant had been identified at the scene as the driver. The defendant argues that the State improperly bolstered its insufficient identification of the defendant as the driver with the inadmissible hearsay testimony of Officer Cassidy. The defendant acknowledges that he did not object to this line of questioning, and he requests that this issue be reviewed for plain error.

¶ 33 To preserve an issue for review in a criminal case, the defendant must raise it in either a motion *in limine* or an objection at trial, and in a posttrial motion or the issue is forfeited. *People v. Denson*, 2014 IL 116231, ¶ 18. "A claim of forfeiture raises a question of law, which we review *de novo*." *People v. Sophanavong*, 2020 IL 124337, ¶ 21. We may review forfeited errors under the plain-error doctrine where (1) the evidence "is so closely balanced that the jury's guilty verdict may have resulted from the error" or (2) "the error is so serious that the defendant was denied a substantial right." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). While we agree that the evidence in this case is closely balanced, we find that the second prong of plain error, the denial of a substantial right, is the more appropriate approach for our review. Specifically, the right to confront a witness, including the right to cross-examine a witness, can be considered under the

11

plain-error doctrine as it is a fundamental right that is not waived. *People v. Stokes*, 392 Ill. App. 3d 335, 340 (2009).

¶ 34    Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Generally, hearsay testimony is inadmissible because the defendant does not have the opportunity to cross-examine the declarant. *People v. Dunmore*, 389 Ill. App. 3d 1095, 1106 (2009). The question of admissibility of evidence is typically within the sound discretion of the circuit court and will not be overturned absent a showing of a clear abuse of discretion. *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994). However, we review questions of law *de novo*, where the facts and the credibility of witnesses are not disputed. *Aguilar*, 265 Ill. App. 3d at 109.

¶ 35    The State argues that Officer Cassidy's statement was admissible under the spontaneous declaration and the course of investigation exceptions to the hearsay rule. "For a hearsay statement to be admissible under the spontaneous declaration exception, there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence." *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). The circuit court may consider additional factors including the nature of the event, the physical and mental condition of the declarant, and the presence or absence of self-interest. *People v. Lesure*, 271 Ill. App. 3d 679, 683 (1995). Every case is judged based on the totality of the circumstances and no specific factor is determinative. *Lesure*, 271 Ill. App. 3d at 683.

¶ 36    Under the "course of investigation" exception to the hearsay rule, statements which explain the progress of a police investigation may be admitted under the rationale that such evidence is not

12

offered for its truth. *People v. Williams*, 2023 IL App (1st) 192463, ¶ 95. Testimony of a police officer about a conversation that he had with an individual and subsequent actions taken in the investigation pursuant to the conversation will not constitute hearsay where it is not being offered for the truth of the matter asserted. *People v. Ochoa*, 2017 IL App (1st) 140204, ¶ 41. However, "[t]he police officer should not testify to the contents of the conversation." *People v. Jura*, 352 Ill. App. 3d 1080, 1087 (2004).

¶ 37 When Officer Cassidy arrived at the scene, "it was extremely chaotic" and he first ran to assist the passengers in the Subaru. When he realized no one was in that vehicle, he ran to assist the defendant, where he stayed until the defendant received emergency medical treatment. Although the event was certainly startling, where a vehicle had flipped on its side and was engulfed in flames, there was no showing of who made the statement which identified the defendant as the driver or what the circumstances were when that statement was made. No testimony was presented that Officer Cassidy had interviewed witnesses, other than affirming a statement that someone had identified the defendant as the driver. Officer Cassidy was not present when the accident occurred. Based upon his testimony that when he arrived at the scene, he initially looked into the Subaru and then ran to provide assistance to the defendant, it is clear that he did not interview any witness until after the individuals involved in the collision received medical assistance. There was no testimony that any of the occurrence witnesses were sufficiently startled to produce a response that would qualify as a spontaneous declaration. Thus, the unknown declarant's mental and physical condition and self-interests are unknown. We find that the statement does not fall within the spontaneous declaration exception to the hearsay rule.

¶ 38 Likewise, we do not find that the course of investigation exception to the hearsay rule applies in this case. Officer Cassidy did not testify to conducting interviews of witnesses at the

13

scene. When Officer Cassidy arrived on the location of the accident, he assisted the defendant and spoke to him because Officer Cassidy thought the defendant appeared to have suffered a neck injury. The other passengers were present, or near the scene, when Officer Cassidy arrived, and three of the four Impala passengers were subsequently taken to the hospital. The State's question of whether an unnamed, unidentified, witness pointed out the defendant as the driver was not necessary to explain police conduct where the individuals involved in the accident were apparent. Officer Cassidy did not testify that he used the information obtained from the witness to pursue further investigation at the scene of the accident. Therefore, Officer Cassidy's testimony was inadmissible hearsay for the purpose of identifying the defendant as the driver.

¶ 39     The State also argues that prior statements were admissible as statements of identification. Prior statements of identification are admissible under Illinois Rule of Evidence 801(d)(1)(B) (eff. Oct. 15, 2015) and section 115-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-12 (West 2022)). The State claims that it is "almost certain" that Alexis was the witness who informed Officer Cassidy that the defendant was the driver of the Impala, and the defendant had the opportunity to cross-examine Alexis. The record, however, does not reflect the assertion that Alexis informed Officer Cassidy that the defendant was the driver. The collision occurred in a residential neighborhood and multiple individuals were present at the scene. Officer Cassidy did not name the witness who informed him that the defendant was the driver, nor did he testify that he had interviewed Alexis.

¶ 40     Having determined that the aforementioned hearsay exceptions are inapplicable, we now consider the defendant's contention that the admission of Officer Cassidy's testimony violated his constitutional right to confront witnesses. "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted

14

with the witnesses against him.' " *Crawford v. Washington*, 541 U.S. 36, 42, (2004). "[T]he Confrontation Clause does not bar statements that are offered for purposes other than the truth of the matter asserted, but concerns testimonial hearsay." *Ochoa*, 2017 IL App (1st) 140204, ¶ 38.

¶ 41 The hearsay identification by Officer Cassidy corroborated the identification by witnesses who were not asked to identify the defendant as the driver in the courtroom. The defendant could not cross-examine an unnamed, unidentified witness, and the admission of the testimonial statement violated the defendant's constitutional right to confront his accusers.

¶ 42 Because the defendant has a fundamental right to confront his accuser, plain-error review applies. The testimony of Officer Cassidy was inadmissible hearsay, and the defendant was prejudiced by the testimony of a police officer identifying the defendant as the driver. Therefore, the defendant was denied a fair trial. We reverse the defendant's convictions and remand this cause for a new trial.

¶ 43 Double jeopardy bars retrial after reversal where the evidence at the first trial was not sufficient to support the conviction. See *People v. Olivera*, 164 Ill. 2d 382, 393 (1995); *People v. Jackson*, 348 Ill. App. 3d 719, 738 (2004). Double jeopardy "does not preclude retrial of a defendant whose conviction has been set aside because of an error in the proceedings leading to the conviction." *Olivera*, 164 Ill. 2d at 393. For the purpose of our double jeopardy analysis, "[w]e consider all the evidence introduced at the original trial, even if erroneously admitted." *Jackson*, 348 Ill. App. 3d at 738. Because the evidence at defendant's first trial was sufficient to support his conviction, retrial is not barred on double jeopardy grounds.

¶ 44 We additionally note that the defendant argues that his counsel was ineffective and the circuit court failed to conduct a preliminary *Krankel* inquiry after the defendant made a *pro se* claim of ineffective assistance of counsel. See *People v. Krankel*, 102 Ill. 2d 181 (1984). The

15

*Krankel* inquiry was developed to address a *pro se* posttrial motion alleging ineffective assistance of counsel. *People v. Roddis*, 2020 IL 124352, ¶ 34. The goal of the *Krankel* inquiry is "to facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal." *People v. Ayres*, 2017 IL 120071, ¶ 13. Where the circuit court fails to conduct an inquiry into the defendant's *pro se* claims, the case should be remanded for the circuit court to conduct the appropriate inquiry. *People v. Moore*, 207 Ill. 2d 68, 79 (2003). Because we are reversing the defendant's conviction and remanding for a new trial for reasons as stated above, we are not remanding for a preliminary *Krankel* inquiry or addressing the defendant's ineffective assistance of counsel claim.

¶ 45                                  III. CONCLUSION

¶ 46     For the foregoing reasons, we reverse the defendant's conviction and sentence and remand for a new trial.

¶ 47     Reversed and remanded.